**Brady PAMPLIN, Sheriff of Falls County, Texas and the State of Texas, Appellants,**

**v.**

**Alexander MASON, Appellee.**

**No. 21941.**

United States Court of Appeals
Fifth Circuit.

July 27, 1966.

Howard M. Fender, Lonny F. Zwiener, Gilbert J. Pena, Asst. Attys. Gen. of Texas, Waggoner Carr, Atty. Gen. of Texas, Hawthorne Phillips, First Asst. Atty. Gen., Stanton Stone, Executive Asst. Atty. Gen., Austin, Tex., for appellants.

Robert L. Penrice, Waco, Tex., for appellee.

Before RIVES, WISDOM, and GEWIN, Circuit Judges.

WISDOM, Circuit Judge:

The petitioner in this habeas proceeding was convicted in the Texas courts of a misdemeanor,[1] aggravated assault upon a local peace officer. The question the case presents is whether the state court's denial of a hearing on the defendant's motion for change of venue, to avoid jury prejudice, violated his constitutional right to due process under the Fourteenth Amendment. The district court granted petitioner's writ of habeas corpus under 28 U.S.C. § 2241 and remanded the cause for a new trial in the Texas courts. We affirm.

---

1. Vernon's Ann.Tex.Pen.Code arts. 1147, 1148 (1961); Tex.Pen.Code art. 48 (1952).

* * *

In August 1963 Alexander Mason, a Negro minister, active in the civil rights movement, led a sit-in demonstration in "white" restaurants in Marlin, the county-seat of Falls County, Texas. This was the first racial demonstration in the community.[2] Shortly after, he was arrested for contributing to the delinquency of a minor. He and, presumably, the minor, had refused to leave a sit-in demonstration in an all-white restaurant in Marlin.

When he was taken to jail for the sit-in violation, Mason asked to use the telephone. The Sheriff agreed, and several deputy sheriffs accompanied Mason to their office where he made his call. After completing the call, he lay down on the office floor and refused to return to his cell. The deputies carried Mason bodily back to the third floor of the jail where they set him down. At this point, Mason seized the bars outside a cell and refused to move. Witnesses for the State testified that when the jailer, a deputy sheriff, attempted to pull Mason into the cell, Mason broke loose. He swung at one of the deputies and pushed him onto a cell bunk, knocking off his glasses and bloodying his nose.

Mason's assault case came to trial eleven days later August 23, 1963. Before presenting his case, the petitioner moved for a change of venue, stating under oath that prejudice against him prevented his obtaining a fair trial in Falls County. The court denied the motion on the ground that the Texas Code of Criminal Procedure did not provide for change of venue in *misdemeanor* cases. The court overruled petitioner's request that the jurors be examined individually and qualified them as a group. In the voir dire, the prospective jurors answered, together, that they did not know petitioner; had formed no opinions in the case; and had no prejudices against the Negro race or against a Negro acting as counsel for petitioner. After a one-day trial, the jury found Mason guilty, assessed a fine of $1,000, and a prison term of two years—the maximum allowable punishment. The petitioner moved for a new trial, urging that it was error to deny a hearing on the motion for change of venue since he had witnesses available before the trial to testify that racial tension in Falls County was so high it was impossible for him to obtain an impartial jury in that county. The court overruled this motion and sentenced on the verdict. The Court of Criminal Appeals of Texas affirmed the trial court judgment, holding that the trial court's interpretation of the venue statute was consistent with a long line of Texas decisions; that the State's failure to provide for a change of venue in misdemeanor cases does not contravene the Texas Constitution.[3] Shortly thereafter, Mason filed his habeas petition in the United States District Court. That court stayed the mandate of the Texas court and released petitioner on bond pending final judgment in the federal proceeding.[4]

The Texas Constitution sets out the fundamental standard that, "In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury. * * *" Vernon's Ann.St.Tex.Const. art. 1, § 10. A state's application of this state right governs, except when Fourteenth Amendment due process standards have not been satisfied. See Friendly, The Bill of Rights as a Code of Criminal Procedure, 53 Calif.L. Rev. 929 (1965). The requirement of impartiality includes the entire atmosphere in which a trial is conducted. Moore v. Dempsey, 1923, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543.

States traditionally employ change of venue procedures as an antidote to community prejudice in the jury box. For

---

2. Martin had a population of 6,918 in the 1960 Census; Falls County, 21,263. 1966 World Almanac 359, 376.

3. Mason v. State, Tex.Crim.App.1964, 375 S.W.2d 916

4. Mason v. Pamplin, W.D.Tex.1964, 232 F. Supp. 539. For an excellent note on the instant case, see 33 Fordham L.Rev. 498 (1965).

eighty years Texas authorized by statute a change of venue in felony cases [5] and, more recently, in misdemeanor cases arising in counties with less than 2500 population.[6] However, Texas courts have consistently construed these statutes as not authorizing venue change for trial of misdemeanors in counties in excess of 2500 persons, even in a climate of county prejudice.[7] In misdemeanor cases Texas expected defendants to rely on the voir dire examination and the motion for new trial to protect against prejudice. See e. g., Williams v. State, 1955, 162 Tex.Cr.R. 202, 283 S.W.2d 239; Scott v. State, 1962, 171 Tex.Cr.R. 568, 352 S.W.2d 726.

The federal district court, in granting the writ of habeas corpus, found that the state court's denial of venue change, in "the totality of the surrounding facts", amounted to the possibility of the denial of a fair and impartial trial. The court based its decision on Irvin v. Dowd, 1961, 366 U.S. 717, 81 S.Ct. 1639, 6 L. Ed.2d 751 and its progeny. "[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." 366 U.S. at 722, 81 S.Ct. at 1642.

Irvin v. Dowd was a habeas proceeding to test the validity of the petitioner's conviction for murder in an Indiana county where intensive publicity had aroused great indignation before the trial. Indiana law allowed only a single change of venue. Since the defendant had already made one transfer, the trial judge denied any further change. The county where the trial was held had 30,000 inhabitants. Justice Clark, for the Supreme Court, found the evidence of prejudice against the defendant "clear and convincing": extensive newspaper stories of the defendant's previous criminal record, police line-up identification, lie detector test, negotiations with the prosecutor, and confessions to similar crimes. The trial court had permitted individual examination of prospective jurors; on voir dire, eight of the panel finally selected expressed the opinion that the petitioner was guilty. The Court concluded that the record showed a pattern of deep and bitter prejudice had existed in the community and *that a clear nexus existed between the community prejudice and the possibility of jury prejudice*. The Court reversed and remanded for a new trial.

More recent Supreme Court cases hold that evidence of pervasive community prejudice is enough for reversal, *even without the showing of a clear nexus between community feeling and jury feeling*. In Rideau v. State of

5. Vernon's Ann.Tex.Code Crim.Proc. art. 560 (1954) provides: "Whenever in any case of felony the judge presiding shall be satisfied that a trial, alike fair and impartial to the accused and to the State, can not, from any cause, be had in the county in which the case is pending, he may, upon his own motion, order a change of venue to any county in his own, or in an adjoining district, stating in his order the grounds for such change of venue."

6. Tex.Code Crim.Proc. art. 563 (1954).

7. E. g., Root v. State, 1960, 169 Tex.Cr.R. 382, 334 S.W.2d 154; Halsell v. State, 1890, 29 Tex.App. 22, 18 S.W. 418. The Texas position represents a minority view among the states. Annot., 38 A.L.R. 2d 738 (1954); Note, 33 Fordham L.Rev. 498, 507 &n. 51 (1965). However, the 1965 Revision of the Texas Code of Criminal Procedure, effective January 1, 1966, provides for a change of venue in misdemeanor cases. Tex.Code Crim. Proc. arts. 31.01–31.03 (1965). This is in line with the procedure in other states of this circuit. Ala.Code Ann. Tit. 15, § 267 (1958); Fla.Stat.Ann. § 911.02 (1941); Ga.Code Ann. § 27–1201 (1953); La.Rev.Stat. § 15:290 (1950); Miss.Code Ann. § 2508 (1957). One of the appellant's chief objections to change-of-venue in misdemeanor cases has been that the old Code of Criminal Procedure did not provide for subpoena of witnesses from one county to another in misdemeanor trials. The new code solves this problem by allowing out-county subpoenas in the same manner as in felony cases. Tex. Code Crim.Proc. art. 24.16 (1965). Although the new code governs any new trial of the petitioner Texas may order, it does not apply retroactively to invalidate the previous judgment. See Reid, The Texas Code of Criminal Procedure, 44 Tex.L.Rev. 983, 996 (1966).

Louisiana, 1963, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663, the facts were similar to *Irvin*. The alleged pattern of prejudice in *Rideau* was generated in large part by the defendant's confessions on a televised interview with the sheriff. The trial court denied a change of venue and challenge for cause of three members of the jury who had seen and heard the damning interview. The Court held that the nation-wide spectacle of the defendant's personally confessing in detail over television to the crimes with which he was later to be charged was in itself sufficient to void his conviction. The Court found it unnecessary to determine from the voir dire transcript whether opinionated jurors actually found their way into the jury box. "[D]ue process of law in this case required a trial before a jury drawn from a community of people who had not seen and heard Rideau's televised 'interview'." 373 U.S. 727, 83 S.Ct. 1420, 10 L.Ed.2d at 666. Justice Clark dissented, because the Court had established no clear nexus between the television program and prejudice of the jury at the trial two months later. In Turner v. State of Louisiana, 1965, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424, the Court reversed the conviction of a defendant where two deputy sheriffs who were principal witnesses for the prosecution had charge of the jury during the three-day trial and fraternized with them outside the courtroom during performance of their duties. Justice Clark again dissented for lack of nexus. It was Justice Clark himself, however, who buried community-jury nexus. Estes v. State of Texas, 1965, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543. Speaking for the majority, Justice Clark held that televising portions of a state criminal trial *in itself* constitutes a denial of due process. He looked back to Chief Justice Taft in Tumey v. State of Ohio, 1927, 273 U.S. 510, 532, 47 S.Ct. 437, 71 L.Ed. 749, 758, for the sweeping general rule that:

> Every procedure which would offer a *possible* temptation to the average man * * * to forget the burden

of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the accused denies the latter due process of law.

381 U.S. at 543, 85 S.Ct. at 1633. (Emphasis in original quotation.)

Justice Clark noted that *Estes*, like *Rideau* and *Turner*, marks a departure from Stroble v. State of California, 1952, 343 U.S. 181, 72 S.Ct. 599, 96 L.Ed. 872 and Irvin v. Dowd, in both of which the Court had made a careful examination of the facts to determine whether actual jury prejudice resulted. In *Estes*, as in *Rideau* and *Turner*, the Court found the probability of prejudice inherent in the obnoxious practice: "the circumstances were held to be inherently suspect." 381 U.S. at 544, 85 S.Ct. at 1633, 14 L.Ed.2d at 551. This term in Sheppard v. Maxwell, 1966, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600, the Court reversed still another conviction because of "inherently prejudicial publicity which saturated the community * * * and disruptive influences in the courtroom". 384 U.S. at 363, 86 S.Ct. at 1522, 16 L.Ed.2d at 621.

In this case, therefore, we apply the *Irvin* holding with the gloss of *Rideau, Estes,* and *Sheppard*. The test is no longer whether prejudice found its way into the jury box at the trial, as the Texas court stated in the petitioner's appeal. Mason v. State, Tex.Crim.App. 1964, 375 S.W.2d 916. As we read the Supreme Court cases, the test is: Where outside influences affecting the community's climate of opinion as to a defendant are inherently suspect, the resulting probability of unfairness requires suitable procedural safeguards, such as a change of venue, to assure a fair and impartial trial. As the Supreme Court stated in Sheppard v. Maxwell:

> Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the

minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused. * * * [W]here there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity. * * * If publicity during the proceeding threatens the fairness of the trial, a new trial should be ordered.

384 U.S. at 362, 86 S.Ct. at 1522, 16 L. Ed.2d at 620.

■ The record is inadequate to judge the intensity of feeling about the petitioner in Falls County prior to his trial. However, there is sufficient evidence to show that the state court's denial of a pre-trial hearing was in itself a denial of due process. We know that Mason was a civil rights leader in Falls County at the time of his trial. He offered to produce witnesses at a hearing for change of venue who would testify to the generally hostile atmosphere of the community. The jury assessed the maximum statutory penalty, and under Texas law the severity of the penalty itself may indicate existence of prejudice against the defendant.[8] Barnes v. State, 1900, 42 Tex.Cr.R. 297, 59 S.W. 882; Cox v. State, 1921, 90 Tex.Cr.R. 106, 234 S.W. 72; 16 Tex.Jur.2d § 269, at 425 (1960). Falls County has just about the same

population as the community in *Irvin* (less than 30,000). There are enough danger signals to warrant reversal for a hearing under the venue procedure *now available under the new Texas Criminal Code.*

■■ The state contends that Mason waived his right to complain of community prejudice: that he introduced only an affidavit that he had witnesses ready to testify to community prejudice; that he did not place evidence of prejudice in the record. We reject this contention. Absent an intentional relinquishment of a known right and absent deliberate by-passing of a known procedural requirement, a federal habeas proceeding is not affected by procedural defaults incurred by the habeas applicant during state proceedings. Fay v. Noia, 1963, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837; Labat and Poret v. Bennett, 5 Cir. 1966, 365 F.2d 698. In this case the petitioner made repeated efforts to secure relief in the Texas courts. He properly moved for change of venue; he sought individual examination of jurors and exhausted his peremptory challenges; he raised the change of venue issue again on direct appeal.

■ It is immaterial that the voir dire did not demonstrate community prejudice.[9] Under *Rideau, Estes,* and *Sheppard,* it is unnecessary to prove that local prejudice actually entered the jury box.[10] Moreover, Justice Clark has

---

8. On appeal of this case, the Court of Criminal Appeals noted: "[W]hile a reduction of the punishment would seem to be appropriate this Court is without authority to reduce it or to set aside the conviction upon the theory that the punishment is excessive." Mason v. State, Tex.Crim.App., 1964, 375 S.W.2d 916, 919.

9. Under the *Rideau* rule the trial court is not precluded from utilizing the voir dire to help gauge the intensity of community prejudice inspired by pre-trial publicity. The point of *Rideau* is that the trial judge need not rely solely on the prospective jurors' own protestations against their individual bias. The court

must make an independent determination of whether a fair trial can be obtained in the community based upon all the evidence available at the time.

10. In Estes v. United States, 5 Cir. 1964, 335 F.2d 609, cert. denied, 1965, 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559, a post-*Rideau* decision, this Court affirmed a district court denial of an application for venue change where the court had conducted a full hearing on the motion, the jurors were individually examined at length on voir dire, and there was no specific showing that community prejudice had resulted from pre-trial publicity about the case. In Mason's trial, however, the court denied individual

warned that in this type situation we must suspect the response of prospective jurors even on individual examination: "No doubt each juror was sincere when he said that he would be fair and impartial to petitioner, but psychological impact requiring such a declaration before one's fellows is often its father." Irvin v. Dowd, 366 U.S. at 728, 81 S.Ct. at 1645. The Supreme Court's emphasis on the feeling in the community rather than the transcript of the voir dire finds ample justification in this case. Where racial feeling may be strong, the voir dire, let alone the group examination to which this defendant was restricted, can hardly be expected to reveal the shades of prejudice that may influence a verdict. Due process of law requires a trial before a jury drawn from a community of people free from inherently suspect circumstances of racial prejudice against a particular defendant.

■ The Irvin v. Dowd line of cases involves capital crimes. We are of the view, however, that the same constitutional safeguard of an impartial jury is available to a man denied his liberty— here two years—for a misdemeanor as for a felony. See Harvey v. State of Mississippi, 5 Cir. 1965, 340 F.2d 263 (90-day sentence); McDonald v. Moore, 5 Cir. 1965, 353 F.2d 106 (6-month sentence).

Since the record clearly shows that the defendant did not intentionally waive his constitutional rights to due process or deliberately by-pass state procedures in seeking to avoid possible community prejudice, it is unnecessary for us to restrict his relief solely to a hearing on these procedural issues. Fay v. Noia, 372 U.S. at 439, 83 S.Ct. at 849, 9 L.Ed. 2d at 869; Whitus v. Balkcom, 5 Cir. 1964, 333 F.2d 496.

We do not decide whether the petitioner is entitled to a change of venue. The primary responsibility for that determination rests with the Texas courts. The district court was satisfied that there

was sufficient possibility of prejudice lurking in the background to warrant reversal for new trial. We agree that no remedy short of a new trial, with the possibility of a change of venue if necessary, would provide adequate correction of the constitutional error in the petitioner's original trial.

The judgment and order of the district court must be

Affirmed.

examination of jurors and did not allow, under compulsion of the prevailing Texas

statute, even a hearing on the change of venue motion.