**Sanford K. BRONSTEIN, Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, Respondent-Appellee.**

No. 80–5448
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.
Unit B

June 4, 1981.

Sanford K. Bronstein, pro se.

Joel D. Rosenblatt, Asst. Atty. Gen., Florida Regional Service Center, Miami, Fla., for respondent-appellee.

Before HILL, FAY and ANDERSON, Circuit Judges.

PER CURIAM:

Sanford Bronstein challenges the district court's dismissal of his petition for a writ of Habeas Corpus on three grounds. First, he contends that he was denied due process of law when the trial court denied his motion for severance. Second, he asserts that he was denied his right to a fair trial as a result of the "inflammatory" pretrial publicity. Third, he argues that he was denied due process of law because of prejudicial prosecutorial misconduct throughout the trial.

We adopt the district court's treatment of these issues as our own. The district court's opinion is appended hereto in full. On appeal, petitioner only raises three of the five issues he raised in the district court. Accordingly, we adopt only parts I, II, and IV of the district court's opinion. The district court's denial of the writ is

AFFIRMED.

## APPENDIX

Sanford K. Bronstein, represented by private counsel, has petitioned for a Writ of Habeas Corpus. Petitioner is attacking a sentence of twenty-five years, followed by ten years probation, which was imposed pursuant to a jury verdict of guilty to twenty-one counts of larceny, forgery, and uttering forged instruments as well as one count of conspiracy. Petitioner is currently in the custody of the respondent.

As grounds for relief the petitioner alleges:

1. The state court erred to the substantial prejudice of the petitioner and denied him his constitutional rights to a fair trial and to due process of law in denying his motion for severance.

2. The petitioner was denied his rights to a fair trial and to due process of law as a result of the inflammatory pretrial publicity.

3. The trial court erred, to the substantial prejudice of the petitioner, and denied him his rights to a fair trial and due process of law in denying the motion for a judgment of acquittal to count 64 of the information.

4. The petitioner was denied his rights to due process of law and to a fair

trial by inflammatory and prejudicial prosecutorial misconduct throughout the trial.

5. The cumulative effect of the prejudicial pretrial and trial publicity, the allegations in count 64 of the information when all the while the state knew that Harold Simonoff denied culpable conspiratorial knowledge or intent, the tainting of the trial by the evidence allegedly in support of that non-existent and non-established "conspiracy", the prosecutorial strategy and conduct designed to unfairly alienate the jury against the petitioner, together with certain rulings of the trial court, all considered in tandem, unfairly disadvantaged the petitioner and denied him due process of law and a fair trial.

I.

■ With respect to point one, in this Court's Order, dated December 5, 1979, petitioner was called upon to clarify which constitutional rights, if any, were violated in the state court proceedings, and how such violations prejudiced the petitioner. Petitioner's supplemental brief fails to set forth any allegations of actual prejudice; instead, he argues that the denial of his motion for severance was inherently prejudicial. 28 U.S.C.A. § 2254 provides:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court *only* on the grounds that he is in custody *in violation of the Constitution or laws or treaties of the United States.* [Emphasis added]

In a federal habeas corpus proceeding, a federal court is bound by the state court's interpretation of a state criminal statute. *Hall v. Wainwright,* 493 F.2d 37 (5th Cir. 1974). The state court has already rejected petitioner's contention that the trial court abused its discretion by denying petitioner's motion for misjoinder. *Bronstein v. State,* 355 So.2d 817 (Fla.3rd DCA 1978). A

state's interpretation of its own laws or rules is no basis for federal habeas corpus relief since no constitutional question is involved. *Monk v. Blackburn,* 605 F.2d 837 (5th Cir. 1979), *Sawyer v. Overton,* 595 F.2d 252 (5th Cir. 1979).

■ Petitioner notes that two of his codefendants were granted writs of habeas corpus and he relies on these cases to support his own petition. See *Tifford v. Wainwright,* 588 F.2d 954 (5th Cir. 1979); *Abbott v. Wainwright,* No. 78–888–Civ–WMH (S.D. Fla., Nov. 8, 1978) 616 F.2d 889 (5th Cir. 1980). *Tifford* and *Abbott* are distinguishable from the present case in that the petitioners demonstrated that the denial of their motions to sever resulted in a fundamentally unfair trial. The petitioners in *Tifford* and *Abbott* contended that their co-defendants would testify on their behalf if their motions to sever were granted. In addition, the petitioners submitted affidavits, signed by their co-defendants, which stated that the co-defendants were willing to testify on behalf of Abbott and Tifford. These affidavits specifically stated the exculpatory testimony that would be made.

The affidavits showed that the possibility of the co-defendants testifying was 'more than a gleam of possibility in the defendant's eye,' *Byrd,* 428 F.2d at 1022, and that the prejudice resulting from the denial of the motion to sever was not speculative. The denial of the severance motion thus made Tifford's trial fundamentally unfair.

*Tifford v. Wainwright,* 580 F.2d 954, 957 (5th Cir. 1979).

The petitioner in the case at bar has failed to demonstrate how the denial of his motion to sever rendered his state court trial fundamentally unfair. The mere fact that two of the petitioner's co-defendants were granted writs of habeas corpus is unpersuasive. Both Abbott and Tifford demonstrated that joining their trials to the trial of Sanford Bronstein resulted in a violation of due process.

The fact that Tifford and Abbott's convictions, on two counts, were found to be fundamentally unfair when joined with the

trial of Bronstein, on sixty-four counts, does not mean that Bronstein's trial was inherently prejudiced. The petitioner must demonstrate how the denial of *his* motion for severance resulted in a violation of *his* constitutional rights.

> On habeas corpus attack of a state court's denial of severance, '[t]he simultaneous trial of more than one offence must render petitioner's state trial fundamentally unfair and hence, violative of due process before relief pursuant to 28 U.S.C.A. § 2254 would be appropriate.

*Alvarez v. Wainwright*, 607 F.2d 683, 685 (5th Cir. 1979).

## II.

The petitioner secondly contends that he was denied a fair trial and due process of law as a result of the inflammatory pre-trial publicity.

> Claims founded on prejudicial pre-trial publicity must be assessed in accordance with the due process standards established in *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). The Supreme Court in that decision held that the Constitution entitles a criminal defendant not to a trial by a body of jurors ignorant of all facts surrounding the case, but to an impartial jury which will render a verdict based exclusively on the evidence presented in court. 366 U.S. at 722–23, 81 S.Ct. at 1642–1643.
>
> > 'It is not required, however, that jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if

> > the juror can lay aside his impression or opinion and render a verdict based on evidence presented in court.' *Id.*
>
> In determining whether a fair and unbiased jury was empaneled, an appellate court is obligated to make an independent evaluation of the special circumstances involved in the case. *United States v. Williams*, 568 F.2d 464, 469 (5th Cir. 1978); *United States v. Williams*, 523 F.2d 1203, 1208 (5th Cir. 1975). It has long been recognized as a general rule of the defendant, in order to establish a deprivation of due process, must show that potential jurors were actually prejudiced by the pretrial publicity. *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *Calley v. Callaway*, 519 F.2d 184, 204 (5th Cir. 1975); *Gordon v. United States*, 438 F.2d 858, 874 (5th Cir. 1971). This burden of proof requires a showing that community prejudice actually invaded the jury box infecting the opinions of the prospective jurors. *United States v. Williams*, 523 F.2d 1203, 1208 (5th Cir. 1975). However, when the defendant proffers evidence of pervasive community prejudice in the form of highly inflammatory publicity or intensive media coverage, prejudice is presumed and there is no further duty to establish actual bias. *Murphy v. Florida*, 421 U.S. 794, 798–99, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *Sheppard v. Maxwell*, 384 U.S. 333, 362, 86 S.Ct. 1507, 16 L.Ed.2d 600; *Estes v. Texas*, 381 U.S. 532, 542–43, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); *Pamplin v. Mason*, 364 F.2d 1, 4–5 (5th Cir. 1966). As this court stated in *Pamplin*:
>
> > 'Where outside influences affecting the community's climate of opinion as to a defendant are inherently suspect, the resulting probability of unfairness requires suitable procedural safeguards, such as a change of venue, to assure a fair and impartial trial.'
>
> 364 F.2d at 5. The cases in which such presumptive prejudice has been found are those where prejudicial publicity so poisoned the proceedings that it was impossible for the accused to receive a fair trial

by an impartial jury. The clearest paradigms of such pervasive publicity were the trials in *Estes* and *Sheppard* wherein the press saturated the community with sensationalized accounts of the crime and court proceedings, and was permitted to overrun the courtroom, transforming the trial into an event akin to a three-ring circus.

*United States v. Capo*, 595 F.2d 1086, 1090–1091 (5th Cir. 1979).

The Third District Court of Appeal in *Abbott v. State*, 334 So.2d 642, 644–645 (Fla.3rd D.C.A. 1976), considered this same issue; Abbott being one of the other defendants who was tried with the petitioner. There the court set forth the facts with respect to this claim as follows.

During voir dire examination of the prospective jurors, each juror was asked whether he/she had heard, read or seen anything about the case. Those who replied affirmatively were asked whether or not what they observed caused them to form an opinion as to the guilt or innocence of the defendants. Of the sixty-five persons who had some form of knowledge about the case, only seven responded that they had formed an opinion, and two were not sure whether they had an opinion. Four of these nine were promptly excused for cause based on their statements of opinion. The other five were ultimately excused and formed no part of the final jury panel. The remaining prospective jurors (fifty-six) all stated that they had formed no opinion as to the guilt or innocence of any of the defendants. The panel indicated that they understood that what was read or seen outside of court did not constitute evidence, and they agreed to consider only the evidence presented at trial. The jurors were asked if they could lay aside anything they may have read, observed or heard, or any feelings they might have. The response was affirmative. Affirmative response also came when questioned if they could give both the defendants and the State a fair and impartial trial. The jurors promised to consider each individual defendant separately. As to the television publicity, only sixteen prospective jurors saw anything at all about the case. At least thirty-four jurors saw absolutely nothing. Of those that say anything on television, what they saw was characterized by the jurors themselves as: a glimpse, a few times, very little, no court proceedings, once over a month ago, twice, but nothing recently, and no opinion of what was seen, a little, but didn't learn from it nor remember. On the question of newspaper publicity, some of the jurors stated they seldom or hardly read the newspaper. Others restricted their readings to such sections as sports, television, comics and horoscopes. Others managed to 'glance' through the newspaper or see headlines relating to the case. These people did not read any of the articles. Most of these people were not interested in what they read, did not remember anything, and only noticed anything several months prior to the trial when the story first broke. Only a few answered that they read articles relating to the case.

■ Having reviewed the record, this Court does not believe that the petitioner was subjected to prejudicial publicity of such a magnitude that it dominated the proceedings and reduced the trial to a mockery of justice.

### III.

Thirdly, the petitioner contends that the trial court denied him his rights to a fair trial and due process of law in denying the motion for judgment of acquittal to count 64 of the information. With respect to this ground, the petitioner presented the following testimony of the co-conspirator, Harold Simonoff, to prove that there was no conspiracy with regards to this count.

A. Over the years I have never disbelieved Mr. Bronstein.

HAFT: In other words you felt as though his word was good, is that correct?

A. That's correct, sir. (R. 2087)

\*  \*  \*  \*  \*  \*

HAFT: And he never gave any money to anyone illegally at all, to your knowledge, did he?

A. Not to my knowledge, no sir. (R. 2091)

\*   \*   \*   \*   \*   \*

Q. All right.

It is also true, is it not Mr. Simonoff, that you did not have any agreement with Mr. Bronstein to steal money from the hospital?

A. That is quite correct, sir.

Q. Quite correct?

A. Yes.

Q. Have you met with other representatives of the State in connection with this case?

A. Well, there have been other investigators in and out.

Q. All right.

Now, on all occasions, Mr. Simonoff, when you had occasion to talk with either Mr. Dardas, Mr. Carhart, or any representative of the State, there was no occasion upon which you told any of them that you had agreed with Mr. Bronstein to steal money or commit a larceny in respect to the hospital, was there?

A. Again, personally?

Q. And you did not agree or conspire or combine or confederate with Mr. Bronstein to steal money from the hospital, is that true?

A. You're talking about personally?

Q. Personally.

A. That is correct, sir.

Q. All right.

Now Mr. Simonoff, can you tell me on how many occasions you have met with Mr. Carhart, the Assistant State Attorney, in connection with this case?

A. Around two or three times, sir.

Q. All right.

Q. Yes, sir—

A. That is correct, sir.

Q. And you always told them—

MR. CARHART: Excuse me, Your Honor.

May I have Mr. Pearson stand to one side or the other in the Courtroom?

MR. PEARSON: I'm sorry.

BY MR. PEARSON:

Q. And you always told them on all of those occasions, Mr. Simonoff, whenever you spoke to them, that the agreement insofar as you understood it that you had with Mr. Bronstein, was an agreement to do what you did with respect to all of these checks for the purpose of benefiting the hospital and creating the cash flow and getting the financing, getting the land acquisition, getting zonings, right?

A. That is correct, sir.

MR. PEARSON: Thank you so much. (R. 2118–2120)

Significant to the disposition of this cause is the recognition of the nature of petitioner's claim. Petitioner is a state prisoner collaterally attacking a state conviction. In this regard, it is well settled that federal courts do not sit in habeas corpus proceedings to review state court rulings on the sufficiency of the evidence. Federal habeas corpus relief is available only when no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

After reviewing the record, this Court finds that there was sufficient evidence whereby a rational fact finder could have inferred beyond a reasonable doubt that the petitioner, not withstanding the testimony noted above, committed the crime of conspiracy to commit grand larceny. In this regard, the Court notes that Simonoff also testified that he became aware of the conspiracy in 1967 when he issued the first check. (R. 2046) Simonoff further stated that he and the petitioner were trusted friends, but that Simonoff did not know whether or not the petitioner had the authority to endorse checks with Simpson's signature. (R. 2054, 2060) Simonoff further testified that it was his idea to prepare the false Onion and Bouchard contract. (R. 2083) He also stated that this idea was discussed and agreed to by petitioner. (R. 2084–2085) Testimony further showed that Simonoff had an agreement with the peti-

tioner that the checks were for the purpose of benefitting the hospital, creating cash flow, getting financing, land acquisitions, and zoning. (R. 2120) Simonoff also stated that he and the petitioner kept their activities a secret from the hospital. (R. 2123) Other testimony elicited at the trial showed that the petitioner never told Simonoff that the proceeds of the checks were to go to Mildred Leahy, June Pavlow, Guild Jewelry or Recognition Devices. (R. 2127) The evidence at trial indicated that some of the monies went to these persons and businesses. (R. 2179–89, 2251–70, 2271–76, 2284–2312)

## IV.

The petitioner further contends his rights to a fair trial and due process of law were denied by inflammatory and prejudicial prosecutorial misconduct throughout the trial.

Among the comments of the prosecutor which were specifically referred to in the petitioner's brief were the following:

I can only state to the Court that my understanding of the legal profession is you can make an objection and protect your client's rights without engaging in such witicisms as panic button, hit me where it hurts, I really tell it like it is, the American way and all that nonsense that inflates from this man's mouth. There's a difference between acting like a clown and being a lawyer. Now, whether Mr. Haft recognizes that difference or not, I don't know." (R. 1826–1827)

MR. CARHART: One more. I would like to be——

MR. HAFT: I'm on cross.

MR. CARHART: —to be able to make an objection without Mr. Haft's large mouth interrupting me. (R. 2105)

MR. CARHART: The objection is repetitious, your Honor. He's made it again and again. And the Court ruled again and again.

MR. PEARSON: Excuse me.

THE COURT: Just a minute, Mr. Carhart. Now, Mr. Pearson has a right to stand and object.

MR. CARHART: I understand he has that right, your Honor. And I have a right to object to his objection.

MR. PEARSON: No. I don't believe that's so, you Honor.

THE COURT: Proceed, overrule your objection (Mr. Carhart's)." (R. 2618–2619)

\* \* \* \* \* \*

"MR. CARHART: That is an objection. And I have listened to this man badger all the witnesses here long enough. And I object to it. (R. 4330) [Underscoring supplied]

Following this remark, the jury was excused and the prosecutor was cited for contempt. (R. 4330–4331)

In addition, the prosecutor also alluded to the pretrial conference in the following manner:

MR. CARHART: I offered to do this at a pretrial conference to move it along. They objected to that.

MR. PEARSON: This is most prejudicial—

MR. HAFT: This is so bad.

THE COURT: All right, gentlemen. Mr. Carhart, after you have asked the witness to identify it, if he can, then show it to the respective defense counsel. (R. 1852) [Underscoring supplied]

The petitioner also objected to the following colloquy on pages 2780–2781.

MR. McMILLEN: As far as my defendant is concerned, I realize he thinks it's a joke, but let's take the jury out.

MR. CARHART: I don't think that is a joke.

MR. McMILLEN: What's the laughing for.

MR. MOSCA: I move on behalf of defendant Abbott, to admonish Mr. Carhart.

MR. CARHART: I heartily apologize, your Honor, for giving way, but—

MR. MOSCA: That's extremely prejudicial in that type of voice, Judge. I don't known that we need to make a mockery out of this court.

MR. CARHART: Judge, I object to those remarks now because now they are at-

tempting to put something into the record that's not there. I wish to elicit testimony, your Honor, as to the assistant of the corporation on a particular date concerning a particular check.

And, that was my only objection to the motion to strike.

MR. PEARSON: Yes, but—

THE COURT: I ruled on the motion, Mr. Carhart. Apparently, you were not listening.

MR. CARHART: I did hear the Court rule on the motion.

THE COURT: And the Court ruled, and the Court will now grant the motion to strike and ask the jury to disregard any testimony regarding bankruptcy status of this corporation.

MR. CARHART: All right. [Underscoring supplied]

Furthermore, the petitioner objected to the following statements made by the prosecutor during the closing argument.

The defendant in this case is Sanford K. Bronstein. He is on trial. He is charged with a crime. You must decide his guilt or innocence.

Those are the people you are trying in this courtroom.

The attorneys, they don't matter a damn. They jump around and stand up and shout and everything else, and sometimes I think they do more obstruction than anything else. The attorneys don't mean anything in this case.

Whether you like Norman Haft or don't—

MR. PEARSON (counsel for Tifford): I object to that remark, your Honor.

MR. CARHART: Or whether you like Ed Carhart or not, that's not the issue in this Courtroom. And each of you said that you would not try this case on the personalities of the attorneys. And don't let yourselves be misled or deflected from what your duty is here, the guilt or innocence of the people charged. (R. 4927).

Following a recess, in which objections made to this statement were denied, as were a motion for a mistrial and request for curative instructions, the prosecutor made the following statement:

Let me just say to you as concerns my remarks concerning attorneys, the Court will instruct you on what the duties of attorneys are in the course of a trial. The gist and tenor of my remarks are that oftentimes, attorneys generate more heat than light on the issues in assisting the jury in arriving in a search for the truth. (R. 4940)

Petitioner again objected and again was overruled. (R. 4940)

The petitioner also objected to the following prosecutorial remarks which appealed to sympathy and community sentiment.

Well, I'll tell you something. They're not too well concerned in this Courtroom. And I don't believe that they'll get you to rewrite the law for them. And for you to do anything, based upon the evidence and sworn testimony as it came to you from this witness stand, other than to find them guilty of every count in this information with which they are charged, you'd have to rewrite the law. (R. 4983)

\* \* \* \* \* \*

These defendants are drowning men grasping at straws. And they're drowning in a sea of evidence, and that sea of evidence is right here on this table. And its available to you if you need to refresh your minds after five weeks. You can read any of it that you ask for in the jury room.

But, they are grasping at straws. They're hoping that some way they're going to convince you to come up with some outrageous decision that would not be based on the testimony or the evidence that comes to you from the witness stand, or the laws that His Honor will charge you at the close of this case.

When you sit here in the very awesome position that you sit in as a jury trying the facts, and with the responsibility of being judges of the facts you set here not only for the six of you for yourselves, but you really sit here for the almost a million and a half people in Dade County. You sit here representing them.

Your decision will determine whether people will say, well, if you steal big enough, you get away with it. Just steal enough and you get away with it. Your decision will make that determination. (R. 4984)

A motion for mistrial was made, alleging that the comments therein were intimidating and designed to coerce the jury into returning a guilty verdict. (R. 4985–86) The motion was denied. (R. 4986)

The Fifth Circuit held in *Alvarez v. Estelle*, 531 F.2d 1319 (5th Cir. 1976) that:

Improper jury argument by the prosecution does not present a claim of constitutional magnitude which is cognizable in a proceeding under 28 U.S.C. Section 2254 unless such argument is so prejudicial that the applicant's state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment. (citations omitted)

In *Bryant v. Caldwell*, 484 F.2d 65 (5th Cir. 1973), a state habeas corpus proceeding, the Fifth Circuit followed the standard set by the United States Supreme Court in *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940), a case in which the court categorized prosecutorial comments as "undignified and intemperate", but stated:

The (the prosecutorial comments) do not comport with the standards of propriety to be expected of the prosecutor. But it is quite another thing to say that these statements constituted prejudicial error. In the first place, it is hard for us to imagine that the minds of the jurors would be so influenced by such incidental statements during this long trial that they would not appraise the evidence objectively and dispassionately. In the second place, this was not a weak case as was *Berger v. United States*, 295 U.S. 78, [55 S.Ct. 629, 79 L.Ed. 1314] where this Court held that prejudice to the accused was so highly probable as a result of the prosecutor's improper conduct 'that we are not justified in assuming its non-existence'. *United States v. Socony-Vacuum Oil Co., supra*, at 239.

■ It is the opinion of this Court that the instant case comes within the holding of *Bryand v. Caldwell, supra*, and *United States v. Socony-Vacuum Oil Co., supra*, in that this too was a long trial, over one month, and the comments although somewhat intemperate and numerous were not so inflammatory that prejudice to the accused was highly probable. Moreover, this Court notes that the trial court delivered instructions regarding the role of the attorneys which effectively remedied any damage that resulted from the prosecutor's remarks.

### V.

Nor is there any merit to the petitioner's final contention that the cumulative effect of the errors complained of above amounts to a denial of due process and a fair trial.

In reviewing a request for federal habeas relief based upon alleged errors committed during a state trial, it is necessary to keep in mind that an error in a state trial does not rise to the level of a Fourteenth Amendment violation unless the alleged error so infects the entire trial that a resulting conviction violates due process. *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). While federal appellate courts have supervisory authority over United States District Courts, and hence can reverse a federal case for retrial on grounds not relating to an alleged constitutional error, such supervisory authority over state courts has never been structured into the Constitution or federal law. Therefore, a state trial must be so 'fundamentally unfair' as to amount to a denial of due process before federal habeas relief can be appropriately applied. *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

*Fields v. Strickland*, 444 F.Supp. 795, 801 (D.S.C.1977).

Having reviewed the record, this Court finds that the errors complained of, neither separately nor viewed together, amount to an error of Constitutional magnitude.

For these reasons, it is hereby

ORDERED AND ADJUDGED that this Petition for Writ of Habeas Corpus be, and the same is hereby DISMISSED.