**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ronald Joseph SAVELL, Defendant-Appellant.**

No. 76–1095.

United States Court of Appeals, Fifth Circuit.

Jan. 26, 1977.

Servando C. Garcia, III (Court-appointed), Michael Allweiss, New Orleans, La., for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Ernest C. Chen, Asst. U. S. Atty., New Orleans, for plaintiff-appellee.

Before MORGAN and GEE, Circuit Judges, and HUNTER,* District Judge.

HUNTER, District Judge:

Defendant was convicted of a violation of 21 U.S.C. § 841(a)(1), a conspiracy to distribute cocaine hydrochloride. He contends that his conviction was prejudicially tainted by the district court's failure to suppress certain inculpatory statements, by the denial of his motion for a continuance, and by the admission as evidence of extrajudicial statements made by an alleged co-conspirator. We have carefully reviewed the record and considered the contentions of the parties in their briefs and oral arguments. The conviction is affirmed.

On July 22, 1975, Robert Rizzuto, contacted Jefferson Parish undercover agents and informed them that "his source" had an ounce of cocaine available for sale. Arrangements were made to make the buy. When the agents arrived at the specified location, they observed appellant Savell standing in front of the Club Lounge. Rizzuto walked out of the lounge and engaged in a brief conversation with Savell. Rizzuto approached the agents who were in a vehicle, gave them a sample, and informed them that he had to retrieve the cocaine from his "pants," whereupon he reentered the lounge and returned a short time later. The actual transfer of the cocaine to the agents took place in a nearby building. The agents asked about purchasing in quantity and dealing directly with the source. Rizzuto informed them that he would have to check but that his source did not want to meet any buyers. After returning to the lounge, Rizzuto remained under surveillance by other agents who observed him walk directly to Savell and hand Savell a portion of a roll of $100 bills. The cocaine purchase had been made with $100 bills.

A five ounce purchase was set up for the following day. Savell was at Rizzuto's home with a brown paper bag in his hand. He and Rizzuto departed together and headed for the Club Lounge. Rizzuto sub-

* Senior District Judge for the Western District of Louisiana, sitting by designation.

sequently met the agents near the lounge and instructed them to follow him to a nearby utility shed. At this location, Rizzuto pointed to two Coca Cola cans, indicating to the agents that they contained five ounces of cocaine. Rizzuto rode with the agents as he counted the money. The agents endeavored to elicit the name of his source. Rizzuto volunteered the name "Ronnie Savell." Rizzuto was then placed under arrest. Later, Savell was arrested by the New Orleans Police Department outside the Club Lounge. At the time of his arrest, Savell was advised of his right to remain silent and of his right to consult an attorney before answering any questions. When informed that he was under arrest, Savell asked "For what?" He was told for distribution of cocaine and that Rizzuto was under arrest. Savell responded that he did not know Rizzuto.

## THE MIRANDA WARNINGS

Appellant insists that his statement to the agent, to the effect that he did not know Rizzuto, should not have been admitted into evidence. To place this issue in proper perspective we reconstruct the exchange between Agent Waguespack and Savell:

Officer: Ronnie.

Savell: Yes?

Officer: You are Ronnie Savell?

Savell: Yes.

Officer: I am a police officer and you are under arrest.

Savell: For what?

Officer: For distribution of cocaine. You have a right to remain silent and anything you say may be used against you. You have a right to the presence of an attorney.

Savell: I don't know what you're talking about.

Officer: Look, man, we know how you are involved; we got Rizzuto down the street in the car.

Savell: Rizzuto—I don't know any Rizzuto.

Certainly, it would be difficult to argue this colloquy was involuntary. He was warned of his right to remain silent; that anything he said could be used against him and that he had the right to presence of counsel. Nevertheless, Savell insists that the failure to advise that counsel would be appointed if he was indigent was fatal. The colloquy involved no compulsion sufficient to breach the right against self-incrimination, but failed to make available to Savell the full measure of procedural safeguards associated with that right since *Miranda*.[1] Under these circumstances, should the statement have been suppressed? Appellant insists that the failure to do so poses a significant danger to the very life blood of *Miranda* and would tend to defeat the manifest objective sought by the Supreme Court.

For the purpose of disposition of this appeal we have no difficulty in rejecting appellant's arguments that his Fifth Amendment rights were violated.[2] *Miran-*

---

1. "He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436 at 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694.

2. A hearing was held by the trial court, after which the judge stated:

"The Court further finds that the facts show that the defendant asked the question why he was under arrest and he was told for distribution of cocaine and he then said I don't know what you are talking about, which the Court finds to be in the nature of a spontaneous exclamation dealing with the fact of his arrest, rather than a response to any questions and that when the officers said come on, we have Rizzuto down the street, he then said I don't know any Mr. Rizzuto or something to that effect, and that this is in the nature of a spontaneous exclamation by the defendant.

"Under these circumstances, since it was not made pursuant to questioning, since it was, indeed, a response to the officers by questioning initiated by the defendant if, anything, in connection with his inquiry concerning his arrest, the Court would find it to be admissible even if the defendant had not been advised of his Miranda Rights.

"So, I will deny the motion to suppress."

*da* only requires that a recital of the warnings precede interrogation and does not reach a situation such as this one, where the statements were unsolicited, spontaneous and freely made prior to any attempted interrogation.[3] There, the Supreme Court noted "volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." 384 U.S. 436 at 478, 86 S.Ct. 1602 at 1630. Accordingly, the use of Savell's statement at trial was not objectionable under *Miranda*. However, even if the district court committed error in this regard, it was beyond a reasonable doubt, harmless error. It is difficult to seriously maintain that the statement affected the jury's finding of guilt. Some rights are so basic that their violation will not permit a harmless error treatment. *Miranda* involves statements which are unlawful but not involuntary in the operational sense, and the harmless error rule is applicable.[4] *Null v. Wainwright*, 508 F.2d 340 (5th Cir. 1975); *United States v. Hill*, 430 F.2d 129 (5th Cir. 1970); *United States v. Jackson*, 429 F.2d 1368 (7th Cir. 1970); *United States v. Harris*, 140 U.S.App.D.C. 270, 435 F.2d 74 (1970); *United States v. Sutt*, 415 F.2d 1305 (7th Cir. 1969).

## THE TRIAL COURT'S REFUSAL TO GRANT CONTINUANCE

On November 4, 1975, two days before trial, in the course of preparing for trial, the Assistant U. S. Attorney learned for the first time that Savell denied that he knew Rizzuto. This denial did not appear in the reports made by the narcotics agent. Defense counsel was promptly informed (the next day) of Savell's oral statement. On the morning of the trial, defense counsel orally moved for a continuance. His motion was denied. There was no showing or allegation of negligence on the part of the United States Attorney. Appellant made no showing before the trial court to indicate any prejudice to his case by the denial of a continuance. He merely asserted there, as he does .here, that the availability of the evidence at an earlier time might have induced him to change his trial strategy. The claim that general lack of preparation time rendered the denial of a continuance an abuse of discretion must be rejected.

## EXTRAJUDICIAL STATEMENTS BY RIZZUTO

With respect to Rizzuto's extrajudicial statements implicating the defendant, the well established rule in the federal courts has been clearly enunciated:

"The declarations of one conspirator made in furtherance of the objects of the conspiracy, and during its existence, are admissible against all members of the conspiracy. *Logan v. United States*, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429. But a defendant's connection with a conspiracy can not be established by the extrajudicial declarations of a co-conspirator, made out of the presence of the defendant. There must be proof *aliunde* of the existence of the conspiracy, and of the defendant's connection with it, before such statements become admissible as against a defendant not present when they were made. *Glasser v. United States*, 315 U.S. 60, 74, 62 S.Ct. 457, 86 L.Ed. 680, 701 * * *."

---

**3.** *Sellers v. Smith*, 412 F.2d 1002 (5th Cir., 1969); *United States v. Cobbs*, 481 F.2d 196 (3rd Cir., 1973); *Pilcher v. Estelle*, 528 F.2d 623 (5th Cir., 1976).

**4.** *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In *Chapman* the Court stated:

We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction. 386 U.S. at 23, 87 S.Ct. at 827.

28 U.S.C. § 2111 provides:

On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.

Fed.Rule Crim.Proc. 52(a) provides:

Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

The test was recently summarized by Judge Brown in *United States v. Grant*, 519 F.2d 64 at 66 (5th Cir. 1976): [5]

" \* \* \* a statement of one conspirator in a crime is admissible against another participant when (i) the declaration is made in furtherance of the conspiracy, (ii) during the pendency of the conspiracy and (iii) when there is independent proof of a nexus between the declarant and the defendant."

Here, all of these elements are unquestionably met. The evidence independent of the hearsay declaration of *Rizzuto*[6] established a prima facie case of the existence of a conspiracy and of defendant's participation in that conspiracy. There was plentiful evidence not only of the conspiracy but that Savell was the other conspirator. The statements were properly admitted by the trial judge.

We have examined the other points raised by appellant and find them to be without merit. The conviction is AFFIRMED.

---

5. The Federal Rules of Evidence reflect these same views (F.R.Evid. 801(d)(2)(E)).

6. When asked if his source was Ronnie Pelligrini, Rizzuto answered in the negative—that his source was Ronnie Savell.