**UNITED STATES of America, Appellee,**

v.

**James MARTORANO, Appellant.**

No. 76–1372.

United States Court of Appeals, First Circuit.

Heard April 13, 1977.

Decided Aug. 24, 1977.

Joseph S. Oteri, Boston, Mass., with whom Oteri & Weinberg, Boston, Mass., Alan M. Dershowitz, Jeanne Baker and Rosenberg, Baker & Fine, Cambridge, Mass., were on brief, for appellant.

Dennis A. Winston, Atty., Dept. of Justice, Washington, D. C., with whom James N. Gabriel, U. S. Atty., Martin D. Boudreau, Sp. Atty., Boston Strike Force, Boston, Mass. and Mervyn Hamburg, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Having on appellant's petition for rehearing granted leave to file briefs on the issue whether *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), has been partially overruled and having now considered the briefs of the parties submitted on this question, we continue to believe that the viability of *Glasser* is in some doubt for the reasons we state below. But our further reflections have persuaded us that we need not face this troublesome issue in this case, for we are satisfied that the tapes of the Pagano-Pallotta conversations were properly admitted under *Glasser.*

 Although *Glasser* confines a district court to the "independent" evidence in deciding whether to admit a statement by a co-conspirator, it has never been the case that statements of the declarant were automatically excluded from consideration. The district court has always been permitted to

consider statements by the declarant which are not hearsay or which are admissible in their own right under an exception to the hearsay rule. *United States v. Geaney,* 417 F.2d 1116, 1120 n. 3, 1121 & n. 4 (2d Cir. 1969); *see United States v. Carlarco,* 424 F.2d 657, 660 & n. 1 (2d Cir. 1970). After reconsidering these tapes in light of the government's briefs, we are persuaded that many of Pagano's statements were "verbal acts", *see Lutwak v. United States,* 344 U.S. 604, 617–19, 73 S.Ct. 481, 97 L.Ed. 593 (1953); VI Wigmore on Evidence § 1766; *cf. Anderson v. United States,* 417 U.S. 211, 219–21, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974). These statements, when considered along with the other pieces of independent evidence, provide a solid basis for the conclusion that a conspiracy existed.

The eight Pallotta-Pagano telephone conversations that were admitted into evidence occurred at various times between December 20, 1974 and January 20, 1975. Although many of the statements Pagano made would be most damaging to appellant only if taken as establishing the truth of the matter asserted, e. g., Pagano's assertion that he had supplied appellant with some of the money that had been lent Pallotta or the statements to the effect that Pallotta would be in danger if he went to appellant's nightclub, other statements were significant simply because Pagano had made them. These include: a large number of statements Pagano made indicating his knowledge both of the loan and of Pallotta's delinquent status; *see* VI Wigmore on Evidence § 1790; and an equally large number of statements which we do not hesitate to characterize as attempts to facilitate and/or to encourage further payments of the loan.[1]

In addition, we note that one of Matera's statements which was admitted into evidence suggests that Pagano was actually in touch with Matera during this period and that Pallotta's situation had been discussed. On January 20, 1975, some twenty minutes after the final call to Pagano, Pallotta telephoned Matera, who answered Pallotta's query with three highly suspicious denials of all knowledge concerning the matter and with the statement "[a]nd don't call that other fellow no more." The most natural inference, given the context, is that the "other fellow" was Pagano and that he had been in contact with Matera concerning Pallotta.

The statements we have referred to could properly be considered by the judge in determining the preliminary question whether Pagano and appellant were members of a common venture. The "independent" evidence thus shows the following. First, there is rather overwhelming evidence that appellant and Matera were members of a common illicit venture. Several pieces of evidence tending to link Pagano to that enterprise are that Matera and appellant were co-conspirators; that Matera and Pagano were long time loan shark partners who, inferentially at least, would be involved in each other's ventures; that Pagano accompanied Matera to collect an interest payment from Pallotta; and that Pagano, in late December, 1974, and early January, 1975, was aware of Pallotta's plight, was willing to take steps to find out Pallotta's situation and to facilitate future payments, and had in fact been in touch with Matera and discussed Pallotta's situation. We thus have no difficulty concluding that

---

1. All eight calls constituted attempts by Pallotta to find out precisely where he stood with appellant and Matera. Several of the calls consisted of long conversations in which they would talk, sometimes, in Pagano's words, "between the lines" about Pallotta's plight. In virtually each call, Pagano expressed a willingness to get information Pallotta wanted. While Pagano never fully delivered on his promise, in each call he encouraged Pallotta to phone back at some future date when Pagano expected to have the information. While other inferences are of course possible, the simple fact that he was willing to talk to Pallotta at some length about his situation and encourage him to call back suggests that Pagano had an interest in facilitating a normalization of the appellant-Pallotta, creditor-debtor relationship. Pagano also at one time assured Pallotta that one payment must have been received and, in one of the last taped conversations, he offered to help arrange further payments if Pallotta should find himself in a position to make them.

it preponderates in favor of the existence of a conspiracy between Pagano and appellant. It is true that each of these items is susceptible to an interpretation other than Pagano's participation in the conspiracy. However, when viewed together, each of them gains color from the others and they satisfy us that Pagano and appellant had associated themselves "in a concerted mutual venture".

Having raised the issue of the continued vitality of *Glasser's* requirement that the proof of the existence of the conspiracy be independent of the statement seeking admission, we will briefly outline why we think *Glassser's* survival may be in doubt. Here, the portion of the taped conversation which is relevant to the conspiracy determination is Pagano's statements to the effect that he had put up part of the money appellant loaned Pallotta. Although inadmissible, these statements were highly reliable. In fact, they come within a hair of being admissible in their own right. If there had been the requisite showing that Pagano was unavailable, they would, we presume, have been admissible as declarations against Pagano's penal interest. *See* Fed.R.Evid. 804(b)(3); *United States v. Barrett,* 539 F.2d 244, 251 (1st Cir. 1976). Moreover, the circumstantial guarantees of trustworthiness arguably were also such that these statements would have been admissible in their own right if the proper notice had been given. *See* Fed.R.Evid. 803(24).

But since the statements were inadmissible, the question here is whether such reliable evidence may be considered by the district court in determining the preliminary fact whether a conspiracy exists. Both the policies and plain terms of Fed.R.Evid. 104(a) seem to indicate that it could be. The rule provides that inadmissible evidence can be considered by the district court in making such determinations, making no distinction between inadmissible evidence generally and the statement seeking admission. And the reason behind the rule—that trial judges, because of their legal experience and training, "will generally be fully cognizant of [the] inherent weakness [of such evidence] . . . and will take such weakness into account in evaluating the preliminary question", Weinstein on Evidence ¶ 104[02](7) at 104–24—is equally applicable to the two kinds of statements. It seems that, once hearsay is placed before the district court, it would be a matter of indifference to the criminal defendant what its source is.

The appellant's argument for the contrary view proceeds from the fact that *Glasser* was premised on the Court's desire to prevent "bootstrapping" of the very hearsay utterance seeking admission to the level of competent evidence. We note first that the new rules permit precisely such bootstrapping in circumstances in which hearsay is trustworthy. *See* Fed.R.Evid. 803(24). And we have to wonder whether a generalized abhorrence of bootstrapping is sufficient justification for barring all use of the trustworthy features of the hearsay statement seeking admission. But under any view of the law we would, as we said in our original opinion, require significant independent evidence of the existence of the conspiracy, deviating from the *Glasser* practice only to the extent of permitting the district court to consider the independent evidence in the light of the color shed upon it by the highly trustworthy and reliable portions of the hearsay utterance seeking admission. This approach would afford the criminal defendants most of the protections provided by the rule of *Glasser,* yet give free play to Rule 104(a)'s policy of recognizing the trial judge's ability to assess the weight to be given otherwise inadmissible evidence.[2]

---

2. Although we entertain these doubts about *Glasser's* survival, we note that other courts have assumed that the new federal rules have not affected *Glasser* in the slightest. *See United States v. Stanchich,* 550 F.2d 1294, 1298–99 n. 4 (2d Cir. 1977); *United States v. Trowery,*

542 F.2d 623, 626–27 (3d Cir. 1976); *United States v. Stroupe,* 538 F.2d 1063, 1065, 1066 (4th Cir. 1976); *United States v. Savell,* 546 F.2d 43, 46–47 (5th Cir. 1977); *United States v. Burgard,* 551 F.2d 190, 196 (8th Cir. 1977); *United States v. Wood,* 550 F.2d 435, 442 (9th

We emphasize that our opinions in this case should not be understood as deciding anything about the continued viability of *Glasser.* We intend to have done no more than indicate the basis for our doubts. Our decision in this case rests solely upon our view that the "independent" evidence established the existence of a concerted mutual venture.

*A part of the petition for rehearing having been previously denied, the balance of the petition for rehearing is denied.*

Cir. 1977). In none of these, however, was the issue specifically considered.