Danny MONK and Jimmy Jiles,
Petitioners-Appellants,

v.

Frank BLACKBURN, Warden, Louisiana
State Penitentiary,
Respondent-Appellee.

No. 78–3380.

United States Court of Appeals,
Fifth Circuit.

Oct. 31, 1979.

Paul M. Haygood (Court-Appointed), New Orleans, La., for petitioners-appellants.

Leon H. Whitten, Dist. Atty., Jonesboro, La., for respondent-appellee.

Before THORNBERRY, CLARK and KRAVITCH, Circuit Judges.

CHARLES CLARK, Circuit Judge:

Danny Monk and Jimmy Jiles were convicted by the State of Louisiana of armed robbery. After an unsuccessful appeal to the Louisiana Supreme Court, they petitioned the district court for a writ of habeas

corpus, 28 U.S.C. § 2254. The district court rejected their request for habeas relief without a hearing. On this appeal Monk and Jiles contend that the district court erred on two grounds in refusing to grant habeas relief. First they contend that the state trial judge incorrectly applied a Louisiana statute which prohibits a party from impeaching his own witness. Second they assert that even if the state trial judge's interpretation of Louisiana law was correct, the application of the statute violated their due process right to present witnesses in their own behalf. We affirm.

In April of 1974, the People's Bank of Chatham, Louisiana, was robbed by two armed men. The two robbers entered the bank at approximately 12:45 p. m., wearing coveralls, gloves, ski masks, and visored motorcycle helmets. One of the tellers and the cashier of the People's Bank testified that one robber was wearing blue-gray coveralls with long sleeves and the other green coveralls with short sleeves. Both men had on light-colored gloves and were armed with pistols, one of which looked like a German Luger. One robber had on a red or burnt-orange motorcycle helmet and the other wore a white helmet with black markings on it. Underneath their helmets both men wore ski masks. One of the robbers had a white pillow case into which he ordered the bank teller to put money. The amount of money missing from the bank after the robbery was $25,018.21. The two men exited the bank at ten or eleven minutes before 1:00 p. m. A gas station attendant, who was working at a service station located diagonally across an intersection from the bank at the time of the robbery, testified that he saw the two men enter the bank, come out of the bank four or five minutes later, and ride off together on a green motorcycle, which had tape over the license plate and which he thought to be a Honda 350. At approximately 1:00 p. m., Deputy Sheriff Alfred Richardson, who was in a patrol car approximately four miles from Chatham, received a radio call stating that the People's Bank had been robbed by two men who escaped on a motorcycle or motorcycles. Almost immediately, he saw two men come up the road on a motorcycle, which he pursued with his red light flashing and his horn blowing. In the patrol car with him were two men whom he had taken to the Veteran's Administration Hospital in Shreveport, Louisiana. After Deputy Richardson bumped the motorcycle with his car, one of its riders either lost or threw off first his helmet and then a piece of cloth appearing to be a mask. He bumped the motorcycle two or three more times and a white object fell down beside the motorcycle. When Richardson's car ran over the white object, money spilled out of it. The men on the motorcycle then threw two objects, which Richardson's passengers testified to be pistols, off to the right of the road and shortly thereafter came to a stop. The entire pursuit covered approximately one and a half miles. The two motorcycle riders, who were Monk and Jiles, were dressed in coveralls and gloves. Jiles was still wearing a red motorcycle helmet with a ski mask underneath. After telling Monk and Jiles that they were under arrest for suspicion of robbing the People's Bank, Deputy Richardson attempted to handcuff them. As Richardson was putting the handcuffs on Jiles, Jiles attempted to break away and a scuffle ensued in which Richardson tore away both sleeves from Jiles' jumpsuit. The motorcycle on which Monk and Jiles had been riding was a green Honda 350 which had tape over the license plate. Richardson's two passengers and other officers who shortly arrived on the scene walked back along the road where the chase took place. They found a .38 revolver and a .22 automatic Luger-style pistol along the side of the road where they had previously seen objects thrown by Monk and Jiles. A white pillow case full of money was found farther back down the road. A ski mask and motorcycle helmet were found still further back.

At trial the bank teller and bank cashier identified the coveralls worn by Monk and Jiles as being identical to those worn by the bank robbers except for the absence of long sleeves on the blue-gray coveralls. They testified that the motorcycle helmet worn

by Jiles and the one recovered from the scene of the chase matched those worn by the robbers. The bank teller testified that the money returned to the bank following Monk and Jiles' arrest totaled $24,817.61.

Following the state's presentation of its evidence, Monk and Jiles' counsel called as its first witness Deputy Richardson, who had previously testified for the state. Upon questioning by the defense counsel, Deputy Richardson reiterated his earlier testimony concerning the manner in which the sleeves of Jiles' jumpsuit were torn off in a scuffle which occurred while he was attempting to handcuff Jiles. The defense counsel then attempted to call two witnesses for the ostensible purpose of rebutting Deputy Richardson's testimony about the jumpsuit's sleeves. The state objected to the calling of the two witnesses on the ground that they were present in the courtroom during the testimony of other witnesses and were subject to the sequestration rule. Instead of sustaining the objection on the ground urged, the court refused to allow the two witnesses to testify on the ground that the defense counsel was attempting to impeach his own witness in violation of Louisiana law.

On this appeal, Monk and Jiles assert first that the trial judge improperly applied Louisiana law in excluding the testimony of the two witnesses, which was offered to rebut Deputy Richardson's testimony. Monk and Jiles raised this argument in their direct appeal of their conviction to the Louisiana Supreme Court, which ruled that the trial judge had acted correctly. *State v. Monk*, 315 So.2d 727, 741–42 (La. 1975). This determination is dispositive of the Louisiana law issue. This court lacks jurisdiction to review the correctness of decisions as to state law by the Louisiana Supreme Court. If that decision was wrong, it may be corrected by writ of certiorari to the United States Supreme Court, but cannot be the object of a collateral attack in this court. *Sawyer v. Overton*, 595 F.2d 252 (5th Cir. 1979); *LeBlanc v. Henderson*, 478 F.2d 481, 483 n.3 (5th Cir. 1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974).

Monk and Jiles next contend that, even if the trial judge correctly interpreted Louisiana law, the application in the case at bar of the Louisiana statute which prohibits a party from impeaching his own witness, La.Rev.Stat. § 15:487 (1967), denied them their constitutional right to due process of law by depriving them of their sixth amendment right to present witnesses in their own behalf. *See Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Assuming that the application of the Louisiana statute was a constitutional error, it was harmless beyond a reasonable doubt in light of the overwhelming evidence of identification and guilt. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Underwood*, 588 F.2d 1073, 1076–77 (5th Cir. 1979); *United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir.), *cert. denied*, 439 U.S. 819, 99 S.Ct. 80, 58 L.Ed.2d 109 (1978); *United States v. Savell*, 546 F.2d 43, 46 (5th Cir. 1977).

AFFIRMED.