Willie X. ROSS, Petitioner-Appellant,

v.

Joe S. HOPPER, Respondent-Appellee.

No. 82–8413.

United States Court of Appeals,
Eleventh Circuit.

Oct. 3, 1983.

John Charles Boger, Jack Greenberg, James M. Nabrit, III, Joel Berger, Deborah Fins, James S. Liebman, New York City, for petitioner-appellant.

Jan Hildebrand, Mary Beth Westmoreland, Asst. Attys. Gen., Atlanta, Ga., for respondent-appellee.

Before KRAVITCH and JOHNSON, Circuit Judges, and LYNNE *, District Judge.

KRAVITCH, Circuit Judge:

On March 3, 1974, after a jury trial in the Superior Court of Colquitt County, Georgia, Willie X. Ross was convicted of armed robbery, kidnapping and murder. Sentences of life imprisonment, twenty years and the death penalty were imposed, respectively. The convictions and sentences were affirmed by the Georgia Supreme Court. *Ross v. State,* 233 Ga. 361, 211 S.E.2d 356 (1974), *cert. denied,* 428 U.S. 910, 96 S.Ct.

3222, 49 L.Ed.2d 1217 (1976). Appellant then petitioned for state habeas corpus relief. After a hearing, relief was denied. That decision was affirmed in *Ross v. Hopper,* 240 Ga. 369, 240 S.E.2d 850 (1977), *cert. denied,* 435 U.S. 1018, 98 S.Ct. 1890, 56 L.Ed.2d 397 (1978). Appellant filed a petition for federal habeas corpus relief in the Southern District of Georgia. The matter was consolidated with two other cases in which the death penalty had been imposed. *Mitchell v. Hopper,* CV No. 478–132 and *Spencer v. Zant,* CV No. 179–247, *reversed and remanded,* 715 F.2d 1562 (11th Cir. 1983). The petitions in each were denied. *Mitchell v. Hopper,* 538 F.Supp. 77 (S.D.Ga. 1982); *Ross v. Hopper,* 538 F.Supp. 105 (S.D.Ga.1982). This appeal ensued.

I. *The Facts*[1]

On August 23, 1973, Willie X. Ross, Freddie Lee King, Rudy Turner, and Theodore Ross, appellant's brother, drove from Madison, Florida to the Clover Farms Highway Grocery at Moultrie, Georgia. When the store closed for the evening they followed the individual who closed the store to a nearby house in which the J.R. Stanford family lived. They then drove back to Madison.

The next evening, August 24, the four men returned to the Stanford home. Wearing stocking masks over their faces, they entered the home, held the family at gunpoint and went through the house collecting various valuables, including Mr. Stanford's .32 caliber pistol. Upon demanding the money from the grocery store, they were told it was in the possession of Robert Lee, who lived nearby, and that Wendell Norman, Stanford's son-in-law and Lee's partner in the grocery store, would return to the Stanford home later that night. When Norman arrived, he was ordered by the intruders to take Theodore Ross and King to get the money. Stanford's fourteen year-old stepdaughter was taken also

---

* Honorable Seybourn H. Lynne, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. The statement of the facts is substantially similar to that of the court below and the Georgia Supreme Court in *Ross v. State, supra.*

as hostage. Appellant Willie Ross and Turner remained with other family members.

Theodore Ross and King, with Norman and the stepdaughter, drove to Lee's home, entered and proceeded to Lee's bedroom. When Norman awoke Lee and explained why they were there, Lee reached for his pistol and fired into the hallway. Either Theodore Ross or King returned fire and grabbed one of Lee's small sons, threatening to kill the child if Lee did not stop firing and turn over the money. Theodore Ross and King were given the cash box containing approximately $20,000 in cash and checks, and fled on foot. Norman then contacted the police.

Lieutenant Tommie Meredith of the Moultrie Police Department responded to the call and drove to the Stanford home, closely followed in a separate car by another officer. Members of the Stanford family testified that Meredith, armed with a shotgun, entered through the kitchen door confronting Turner, who, armed with a .22 caliber pistol, was crouching at the opposite end of a table in the adjoining dining room. Ross was seen standing against a wall near a refrigerator in the dining room and armed with Stanford's .32 caliber pistol. Turner, stating "I've got them right here," motioned for one of the family members to come toward him. The Stanfords, however, fled to a bedroom and closed the door. Immediately thereafter, both Stanford and the other police officer heard an exchange of gun fire. The officer, approaching the house from outside, saw and fired at two persons running from the house through the back yard.

The officer found Meredith's body on the kitchen floor, shot through the chest at point blank range. The pistol last seen in Turner's possession was discovered in the back yard, fully loaded, the cartridge in the firing chamber bearing an indentation indicating the pistol had misfired. The .32 caliber pistol belonging to Stanford and last seen in Willie Ross' hand seconds before the

shooting, was found near the back-yard fence, one round having been fired from it. A micro-analyst for the State Crime Laboratory identified the bullet removed from Meredith's body as having been fired from the .32 caliber pistol.

Theodore Ross testified at appellant's trial that appellant had told him that he (Willie Ross) thought he had shot a policeman and that Turner's gun had misfired. Bobby Gamble, another State's witness, who had driven appellant back to Florida in the days subsequent to the incident, also testified that appellant had told him he thought he had killed a policeman. Appellant was apprehended in New York several months later, extradited to Georgia, and indicted for kidnapping, armed robbery and the murder of Lieutenant Meredith. We are here confronted only with challenges to the murder conviction and imposition of the death penalty.[2]

## II. *The Claims*

Appellant raises six challenges that were asserted in the court below: (1) under the authority of *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), the death penalty constitutionally may not be imposed when appellant was convicted of felony murder and there was no specific finding by the state court that he killed, attempted to kill, or intended to kill; (2) the precepts of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) were violated by the state's knowing use of perjured testimony of appellant's brother Theodore that appellant had told Theodore he had shot a policeman; (3) the precepts of *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) were violated by the state's failure to disclose evidence contradicting Theodore's statement that no promises had been made to him in exchange for his testimony against Willie; (4) the district court erroneously failed to hold an evidentiary hearing on appellant's challenge to the composition of the grand and traverse juries; (5) an evi-

---

2. Appellant's challenge to the jury venires potentially would affect all of the convictions. It

appears, however, that appellant challenges only the murder conviction.

dentiary hearing also was required in regard to appellant's claim that the Georgia death penalty statute is applied in an arbitrary and racially discriminatory manner and with inadequate appellate review; and (6) the district court should have conducted an evidentiary hearing on appellant's claim that failure to grant a change of venue due to prejudicial pretrial publicity deprived him of a fair trial. Finally Ross, for the first time on appeal, contends that the charge to the jury in the sentencing phase of the trial did not adequately explain the function of mitigating circumstances, in violation of *Spivey v. Zant,* 661 F.2d 464 (5th Cir.1981); *Goodwin v. Balkcom,* 684 F.2d 794 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983); *Westbrook v. Zant,* 704 F.2d 1487 (11th Cir. 1983). We address each in turn.

## A. The *Enmund* Claim

■ Appellant asserts that the death penalty is disproportionate on the facts of this case in which he was convicted pursuant to a felony murder indictment and jury charge. Appellant relies on *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), decided three months after the district court denied habeas relief, to support his claim that, where the jury was allowed to convict him of murder only because of his participation in the robbery and in the absence of a finding that appellant killed, attempted to kill or intended to kill, the death penalty must be set aside. We disagree with appellant's reading of *Enmund* and the evidence in this case, and affirm.

In *Enmund* the defendant was convicted of murder under Florida law whereby an individual may be found guilty of first degree murder if he was present at the scene and actively aiding and abetting the commission of a felony, there a robbery or attempted robbery, during the course of which someone is killed, even though the individual neither took life nor possessed a premeditated design or intent to take life. The Florida Supreme Court held that, at the most, the evidence showed that En-

mund drove the get-away car for the persons who committed the robbery and the killing and concluded that, without regard to Enmund's intent to kill, the evidence was sufficient to allow the jury to convict and sentence Enmund to death as an aider and abetter in a robbery. The United States Supreme Court reversed, concluding that "[b]ecause the Florida Supreme Court affirmed the death penalty in this case *in the absence of proof* that Enmund killed or attempted to kill, and regardless of whether Enmund intended or contemplated that life would be taken," 102 S.Ct. at 3379 (emphasis supplied), the death penalty was disproportionate to Enmund's crime.

The Court stated:

The question before us is not the disproportionality of death as a penalty for murder, but rather the validity of capital punishment for Enmund's own conduct. The focus must be on *his* culpability, not on that of those who committed the robbery and shot the victims; for we insist on "individualized consideration as a constitutional requirement in imposing the death sentence," *Lockett v. Ohio,* 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978) (footnote omitted), which means that we must focus on "relevant facets of the character and record of an individual offender." *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976).

*Id.* at 3377 (emphasis in the original).

Turning its attention to the individual culpability of Enmund, the Court concluded that the record, as construed by the Florida Supreme Court, did not warrant a finding that Enmund himself killed, attempted to kill or had any intention of participating in or facilitating a murder. The court therefore held that "his culpability is plainly different from that of the robbers who killed" and that treating them alike in imposing the death penalty was impermissible under the Eighth Amendment. *Id.*

An examination of the record in this case, as construed by the Georgia Supreme Court, leads us to conclude that the individual culpability of appellant Ross is significantly

greater than the culpability of the defendant in *Enmund.* There is sufficient evidence in the record to support a finding that Ross not only contemplated that lethal force might be employed during the robbery and hence possessed an intent to kill, but that he actually committed the murder himself. Ross was seen standing in the dining room armed with Stanford's .32 caliber pistol seconds before the shooting. Witnesses testified that two rounds from Meredith's shotgun were fired, followed immediately by a pistol shot. Meredith's body was found in the adjoining kitchen shot through the chest with a single bullet at close range. Ballistics tests later revealed that the bullet was fired from the same .32 caliber pistol seen in Ross' possession seconds before the shooting. Shortly thereafter Ross told his brother Theodore that he had shot a policeman and that the gun of his accomplice had misfired. He also told another witness that he thought he had killed a policeman. *Ross v. State,* 233 Ga. 361, 364, 211 S.E.2d 356, 358 (1974).

The record demonstrates that even though Ross was indicted and convicted on a felony murder charge the theory of the State's case was that Ross himself was the triggerman. The case is readily distinguishable from *Enmund,* where the evidence supported no more than an inference that at the time of the killing the defendant was seated in a get-away car at the side of the road waiting for the robbers to escape. Here there is sufficient evidence in the record to support a conclusion that Ross contemplated that life would be taken, intended to kill, and actually killed Lieutenant Meredith. Examining the individual culpability of the defendant, as did the Supreme Court in *Enmund,* we conclude that the punishment was not disproportionate in relation to Ross' participation in the crime. The holding of the district court on this issue is AFFIRMED.

## B. The *Brady* Claim

At trial, Theodore Ross, brother of appellant and participant in the robbery during which Lieutenant Meredith was killed, testified for the prosecution. He testified that his brother Willie had told him that he, Willie, had shot the policeman. In state habeas proceedings Theodore testified that Willie had not told him that he had shot a policeman; rather, Theodore's wife had told him that Willie told her he had done so. Ross alleges that the state knew Theodore's testimony in this regard was false at the time it was given. He claims this presents a violation of the state's constitutional duty not to introduce testimony known to be false under the precepts of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2394, 49 L.Ed.2d 342 (1976); *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935).

Relying primarily on the testimony of the prosecutor, the state habeas court found, and the finding was affirmed by the Georgia Supreme Court, that even if Theodore's trial testimony was false and perjured "there is no credible testimony that the State knowingly and intentionally used perjured testimony at the trial of Willie X. Ross." March 22, 1977 Order of Superior Court of Tattnall County at 9.

Appellant asserts that an evidentiary hearing is required because the state habeas court's reliance on the testimony of the prosecutor was an insufficient basis for making the necessary determination that the state did not knowingly offer perjured testimony. In effect the state court found that the prosecutor himself had no reason to doubt the veracity of Theodore's testimony that Willie said he shot the policeman.

According to appellant, law enforcement officers who initially questioned Theodore should have known the testimony was false because originally Theodore stated he did not know who shot Lieutenant Meredith. Only later, perhaps after promises were made, did he change his story. The knowledge of these officers, which appellant contends could be established in an evidentiary hearing, should be attributed to the prosecutor.

■ Any promises offered by state attorneys other than the lead prosecutor or by

law enforcement officers, or any information obtained by them in the course of their investigation, must be attributed to the prosecutor for purposes of this type of constitutional violation. *Giglio v. United States,* 405 U.S. at 154, 92 S.Ct. at 766 (other state attorneys); *Freeman v. State of Georgia,* 599 F.2d 65, 69 (5th Cir.1979) (law enforcement officers). The actual finding by the state habeas court pertaining to this issue was that there was "no credible testimony" that the state used Theodore's testimony of Willie's confession knowing it was perjured. Because this is not a conclusive finding that the state did not knowingly use the perjured testimony, appellant in effect claims that "the material facts were not *adequately* developed at the state-court hearing . . . ." *Townsend v. Sain,* 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963) (identifying six circumstances in which a federal habeas court must hold an evidentiary hearing) (emphasis added).

In *Thomas v. Zant,* 697 F.2d 977 (11th Cir.1983), a panel of this court explained in detail the showing a habeas petitioner must make before a federal evidentiary hearing will be required based on inadequate development of facts in the state court:

> [A] federal habeas petitioner must make a showing of two elements in order to obtain an evidentiary hearing based on the fifth circumstance of *Townsend.* First, that a fact pertaining to his federal constitutional claim was not adequately developed at the state court hearing and that the fact was "material" . . . ; second, that failure to develop that material fact at the state proceeding was not attributable to petitioner's inexcusable neglect or deliberate bypass. Either of these may itself require an evidentiary hearing.

*Id.* at 986.

■ Where, however, the facts alleged, even if proved, would not warrant habeas relief, no evidentiary hearing need be held. *Guice v. Fortenberry,* 661 F.2d 496, 503 (5th Cir.1981) (en banc); *Easter v. Estelle,* 609 F.2d 756, 761 (5th Cir.1980); *Cronmon v.*

*Alabama,* 587 F.2d 246, 249 (5th Cir.), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 792 (1978).[3]

■ Here, even if Theodore originally claimed ignorance and subsequently provided the allegedly false information, there would be no basis for inferring that law enforcement officers suspected or should have suspected the testimony was untrue. Persons under police investigation and interrogation often are reluctant to disclose information they may possess. Moreover, a separate witness, Bobby Gamble, told authorities and testified at trial that Ross had told him he shot the police officer. Gamble's testimony thus corroborated Theodore's version of Ross' confession. The facts alleged by appellant, even if proved, would not indicate that law enforcement officers had knowledge Theodore was perjuring himself by testifying that Willie told him he had shot the police officer. *Easter v. Estelle,* 609 F.2d at 761. The mere fact that Theodore may have changed his story is not sufficient to put the prosecution on notice that the new story was false. We need not determine, therefore, whether the criteria in *Thomas* were met and accordingly hold that no evidentiary hearing was required on appellant's *Brady* claim.

## C. The *Giglio* Claim

Appellant contends that the state failed to disclose evidence contradicting Theodore Ross' testimony that the state gave him no promises in exchange for his testimony. During cross-examination at Ross' trial, Theodore, who also had been indicted for murder, kidnapping and armed robbery in connection with the same events, was asked if any state officials had offered to recommend a lighter sentence in his case in exchange for his testimony. He answered in the negative. Theodore subsequently testified at the state habeas hearing that he developed his trial testimony only after his lawyer indicated that if he cooperated with the state he would receive a lighter sen-

---

**3.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding on this court. *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

tence and would be allowed sexual relations with his wife. In the same proceeding, however, the prosecutor testified that there had been no bargain for a particular sentence between the state and Theodore or his attorney prior to Theodore's testimony.

The state habeas court found (1) it "disbelieve[d] Theodore Ross' testimony that he was coerced into testifying against his brother Willie," (2) "there [was] no credible testimony that the state knowingly and intentionally used perjured testimony at the trial," and (3) "there had been no plea bargaining with Theodore Ross or his attorney." March 22, 1977 Order of Superior Court of Tattnall County at 9.

Appellant asserts that after the state habeas hearing he discovered new evidence, in the form of a deposition of district attorney Lamar Cole,[4] which suggests that the state might have discussed the possibility of a plea bargain arrangement with Theodore Ross before his testimony at trial. He contends that the district court in the federal habeas proceeding should have conducted an evidentiary hearing to determine whether the state did in fact discuss the possibility of recommending a lesser sentence in exchange for Theodore's testimony. If the state withheld information about a plea arrangement, appellant argues he is entitled to a reversal of his conviction under *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (prosecutorial suppression of an agreement or promise to a material witness in exchange for that witness' testimony violates criminal defendant's due process rights). Because this "new evidence" was not properly raised in the district court, however, we hold that the district court did not err in failing to hold an evidentiary hearing.

■ The law in this circuit is clear that arguments not presented and for which proof is not offered in the district court will not be considered for the first time on appeal. *Stephens v. Zant,* 716 F.2d 276, at 277 (11th Cir.1983) (per curiam); *Cobb v. Wainwright,* 666 F.2d 966, 968 n. 1 (5th Cir. Unit B), *cert. denied,* 457 U.S. 1107, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982); *United States v. Indiana Bonding & Surety Co.,* 625 F.2d 26, 29 (5th Cir.1980). Nothing in this record indicates that the district court was made aware of appellant's new evidence on the plea bargaining issue. From the allegations in the petition for writ of habeas corpus to the argument of counsel at the habeas hearing, appellant made no reference to any statements contained in Lamar Cole's deposition that would have advised the district court that any new evidence had been discovered.[5]

■ Since the district court was not presented the opportunity to determine the merits, this court will not consider appellant's contention. Appellant claims to have obtained Cole's deposition on December 7, 1979, more than one year before the federal habeas hearing in the district court. There was ample opportunity for appellant to have informed the district court of his alleged newly discovered evidence. Accordingly we will not order the district court to conduct an evidentiary hearing on an issue that, through the inaction of appellant him-

---

4. The deposition of Cole was not made part of the record on appeal; the only reference to it is contained in Brief for Appellant at 14, 15 & appendix.

5. In his brief to this court appellant asserts that he repeatedly sought a federal evidentiary hearing on this issue and that he "informed the court [of] 'significant new evidence'" obtained in a discovery deposition of Lamar Cole. Brief of Appellant at 14. The record does not support this assertion. Appellant did inform the court in general terms that he had uncovered "significant new evidence bearing on several of

petitioner's claims," Record at 141, but a description of the new evidence does not mention the deposition of Cole or the *Giglio* claim. *See* Record at 145–46.

Moreover, in the federal habeas hearing appellant's legal representative had an opportunity to inform the court of the existence of Cole's deposition and failed to do so. He did not raise the issue of plea arrangements, nor did he suggest that Lamar Cole would be called as a witness should an evidentiary hearing be granted.

self, was never brought to the court's attention.[6]

The claim appellant presented to the district court was a general allegation that the prosecution knowingly allowed perjured testimony to go unchallenged in violation of *Giglio, supra.* The only evidence appellant proposed to offer at an evidentiary hearing was the testimony of Theodore Ross and two other witnesses, who would have testified on the background of Theodore. Appellant's counsel stated at the federal habeas hearing that these witnesses would verify Theodore's assertion that he lied about appellant's confession in exchange for a promise allowing Theodore to have sexual relations with his wife while in prison. Based upon this allegation, the district court refused to hold an evidentiary hearing:

> This evidence was presented for consideration to the judge of the Superior Court of Tattnall County, Georgia, at Ross' habeas corpus hearing. That court rejected Theodore's version as not credible. (Habeas order, p. 9). The credibility determination made by Judge Caswell appears reliable, and *since Ross has not provided this Court with any indication of the reverse,* 28 U.S.C. § 2254(d) requires this Court to accept that determination.

*Mitchell v. Hopper,* 538 F.Supp. 77, 102 (S.D.Ga.1982) (emphasis added).

*Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), delineated the criteria for determining when an evidentiary hearing is mandated in a federal habeas corpus proceeding. The Court held that a federal hearing is not required if the "state court trier of fact has after a full hearing reliably found the relevant facts." *Id.* at

312, 83 S.Ct. at 757; *Thomas v. Zant,* 697 F.2d 977, 980 (11th Cir.1983).

■ Appellant contends that the state habeas court made incomplete findings of fact on the question whether Theodore was given any promises in exchange for his testimony. As we stated in the discussion of *Thomas, supra,* to succeed on an allegation of inadequate development of the facts at a state hearing, appellant must show: (1) that a material fact was not adequately developed at the state court hearing and (2) that the failure to develop the fact was not attributable to his inexcusable neglect or deliberate bypass. *Thomas v. Zant,* 697 F.2d at 986.

Appellant argues that the findings of the state habeas court were inadequate because the court found only that the prosecution had not entered into "plea bargaining" with Theodore Ross; it did not find that no "promises" had been made in exchange for testimony. We disagree with appellant's interpretation of the state court findings. The order of the state habeas court included a discussion of Theodore's testimony recanting the assertions he made at trial and admitting that he testified falsely in return for favors from the state. It also included a summary of the district attorney's testimony that there had been no plea bargaining. Based upon the evidence, the state habeas court concluded that Theodore's testimony was not credible and that the state had not entered into a plea bargain arrangement in exchange for testimony. Whether the court used the words "plea bargain" or "promises" is not significant. The state court made a finding that Theodore Ross' habeas testimony was not credible and that no deal had been struck. The

---

**6.** Although the merits of appellant's claim are not properly before this court, we find no support for appellant's assertion that Cole's deposition reveals the state's knowledge that Theodore Ross had been promised anything in exchange for his testimony. In fact, when the question was put directly before him, Cole stated unequivocally that "there was no promise of any consideration on account of testimony." Brief for Appellant, appendix at 20. At most, the deposition reveals Cole's belief that he may have discussed with Theodore the possibility

that, based on his prior record, overall cooperation with the police and demonstration of remorse, the state would "consider" waiving the death penalty should he plead guilty. Cole's statements indicate a possibility that the state might consider waiving the death penalty in exchange for Theodore's guilty plea, his past cooperation and his repentant attitude, not in exchange for his testimony for the state. These assertions are consistent with Cole's testimony at the state habeas hearing as well as Theodore's statements at trial.

finding in the state habeas court was made after a full hearing in which both sides were given the opportunity to present evidence and cross examine witnesses. The sole purpose of a federal hearing would be to bolster the credibility of Theodore Ross. The state court ruled against appellant on the precise issue raised in the federal habeas proceeding, and appellant failed to demonstrate that the state hearing was not adequate. We therefore hold that the district court did not err in denying an evidentiary hearing on appellant's *Giglio* claim.

Appellant further contends that the district court erred by failing to conduct an evidentiary hearing on each of the three remaining claims. We will review each separately.

## D. Grand and Traverse Jury Challenges

[8] Appellant alleges that the venires from which the grand and traverse juries that indicted, convicted and sentenced Ross were selected, substantially underrepresented black persons and women. The court below initially concluded appellant had waived his right to raise this claim by failing to timely challenge the venires or meet the test of *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976) or *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). As the district court correctly recognized on reconsidera-

tion, however, the state habeas court ruled on the merits of appellant's claim, citing insufficient evidence to support the contention, and therefore no principle of comity bars the federal habeas courts from analyzing the claim. *Ross v. Hopper,* 538 F.Supp. 105 (S.D.Ga.1982); *see Ulster County Court v. Allen,* 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979); *Lefkowitz v. Newsome,* 420 U.S. 283, 292 n. 9, 95 S.Ct. 886, 891 n. 9, 43 L.Ed.2d 196 (1975); *Henry v. Wainwright,* 686 F.2d 311 at 313–14 (5th Cir.1982 Unit B).

Although recognizing no waiver of the claim, the court below refused to allow an evidentiary hearing on the ground that appellant had a full and fair opportunity to present the jury composition issue to the state courts and failed to show why the "presumption of correctness," *Sumner v. Mata,* 449 U.S. 539, 551, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981), should not attach to the state's finding. *Ross,* 538 F.Supp. at 106; *see* 28 U.S.C. § 2254(d). After a hearing to determine the necessity for an evidentiary hearing, the court concluded that appellant did not satisfy any of the statutory exceptions in 28 U.S.C. § 2254(d) so as to negate the statutory presumption of correctness.[7]

As discussed *supra,* the Supreme Court's decision in *Townsend v. Sain* governs a

7. 28 U.S.C. § 2254(d) provides in pertinent part:

 (d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

 (1) that the merits of the factual dispute were not resolved in the State court hearing;
 (2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
 (3) that the material facts were not adequately developed at the State court hearing;

 (4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;
 (5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;
 (6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or
 (7) that the applicant was otherwise denied due process of law in the State court proceeding;
 (8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record[.]

determination of when a federal evidentiary hearing *must be* held:

> If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Townsend v. Sain,* 372 U.S. at 313, 83 S.Ct. at 757. This court previously has recognized:

> *[Sumner v.] Mata* in no way speaks to the issues of if and when a federal court may hold an evidentiary hearing. Moreover, § 2254(d) contemplates that in some cases the federal court will hold an evidentiary hearing for the purpose of determining whether to apply the presumption of correctness to the state court findings ...
> Thus neither *[Sumner v.] Mata* nor § 2254(d) can be read to *require* the federal court to determine § 2254(d)'s applicability *prior* to holding a hearing on the federal habeas claims.

*In Re Wainwright,* 678 F.2d 951, 953 (11th Cir.1982) (emphasis in original). The *Townsend* analysis governs the question whether an evidentiary hearing must be held; section 2254(d) controls the burden of proof at such hearings. *Spencer v. Zant,* 715 F.2d 1562 at 1579–1580 (11th Cir.1983); *Thomas v. Zant,* 697 F.2d at 984, 986.

 Appellant categorizes his claim as falling into both the fourth and fifth

circumstances identified in *Townsend v. Sain.* As stated *supra,* however, the threshold inquiry in evaluating a *Townsend* claim is whether the facts alleged, even if proved, would support appellant's constitutional claim. *Guice v. Fortenberry,* 661 F.2d 496 (5th Cir.1981). The prerequisites for federal relief from the allegedly discriminatory selection of a grand jury were established in *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977): the petitioner must (1) establish that the group against whom discrimination is asserted is a recognizable, distinct class; (2) prove the degree of underrepresentation by comparing the proportion of the group in the total population to the proportion called to serve over a significant period of time and (3) show that the selection procedure is susceptible to abuse or is not class neutral. *Id.* at 494, 97 S.Ct. at 1280; *Guice, supra,* at 499. The only evidence appellant intended to present at an evidentiary hearing consisted of a self-serving statement by one of his attorneys who had examined Colquitt County jury lists and the testimony of a Colquitt County jury commissioner who, according to his deposition taken by appellant in 1979, made only inconclusive statements concerning the selection procedures employed and racial and sexual composition of jury lists six years earlier.[8] Appellant offered to produce no evidence that would have proved underrepresentation of blacks and women in violation of his fifth amendment rights. The evidence proffered would not have established the requirements set out in *Castaneda.* Because appellant's allegations, even if proved, were inadequate to sustain his constitutional challenge, no evidentiary hearing was required.

---

**8.** Based upon his recollection of the composition of the 1973 Colquitt County jury lists, the commissioner was asked to give "ball park estimates" of the percentages of women and blacks selected to serve. Although he replied with rough estimates, he emphasized that his judgments were based on nothing more than guesswork. When specifically asked whether the percentage of blacks and women on the voter registration lists matched the percentage selected for the jury lists, he replied, "Well,

really, I can't answer. I would think probably pretty close but I can't answer that with any intelligent answer." Dec. 6, 1979 Deposition of T.E. Norman at 39 & 52.

Appellant's difficulty in producing any evidence of underrepresentation stems in part from the fact that the 1973 jury lists were discarded in 1975 after the county revised them. Appellant raised his objection to the jury array for the first time at the state habeas proceeding in 1976.

In addition, an evidentiary hearing is not required under the fifth *Townsend* category unless "a fact pertaining to his constitutional claim was not adequately developed at the state court hearing. . . ." *Thomas, supra* at 986. The state court afforded appellant a full hearing on his constitutional challenge. Despite this opportunity to establish the factual basis for his assertion of underrepresentation, appellant offered only the affidavit of one of his attorneys in support of his contention. After reviewing the evidence, the court concluded that appellant failed to establish a factual basis for his allegation. March 22, 1977. Order of Superior Court of Tattnall County at 12. Any inadequacy in the development of evidence in support of Ross' factual assertions was not due to any action or inaction on the part of the state habeas court. The court examined all of the evidence offered in support of appellant's claim and concluded that the allegation was not proved. Based upon this record we cannot conclude that the question of underrepresentation was undeveloped so as to require an evidentiary hearing under *Townsend.*

Appellant asserts, however, that the factual development in state court was undeveloped because new evidence, specifically the depositions of Colquitt County commissioners, was not before the Superior Court. This contention comes under the fourth, not fifth, category of *Townsend.* In discussing the fourth circumstance on which an evidentiary hearing is required, the Supreme Court stated:

> Where newly discovered evidence is alleged in a habeas application, *evidence which could not reasonably have been presented to the state trier of facts,* the federal court must grant an evidentiary hearing.

372 U.S. at 317, 83 S.Ct. at 759 (emphasis added).

■ Appellant did not assert before the district court, nor does he here, any reason why the depositions of Colquitt County jury commissioners could not have been presented to the state habeas court. In a habeas proceeding the burden is on the petitioner to show why federal post-conviction relief should be granted. *Douglas v. Wainwright,* 714 F.2d 1532 at 1543 n. 10 (11th Cir.1983); 28 U.S.C. § 2254. One of the elements required in proving the necessity for an evidentiary hearing under the fourth *Townsend* category is a showing that the newly discovered evidence could not reasonably have been presented to the state court trier of fact. Since appellant has alleged no reason for his inability to present his new evidence to the state court, his *Townsend* claim must fail.

The judgment of the district court on appellant's challenge to the grand and traverse juries therefore is AFFIRMED.

### E. Arbitrary and Discriminatory Enforcement of the Death Penalty

■ The district court also denied an evidentiary hearing on appellant's claim that the Georgia death penalty statute was being applied arbitrarily and discriminatorily to black persons and that the Georgia appellate review process was inadequate to remedy this inequitable application.

For the reasons stated in the panel opinion in *Spencer v. Zant,* 715 F.2d 1562 at 1578–83 (11th Cir.1983), the case with which Ross' habeas petition was consolidated in the court below and in which the identical claim and evidence were presented, we REVERSE and REMAND to the district court for further evidentiary development. *See Spencer v. Zant,* 715 F.2d 1562 at 1578–83 (11th Cir.1983).

### F. Change of Venue

■ The district court concluded that appellant's right to a trial by a fair and impartial jury was not violated by the trial court's denial, after a hearing, of Ross' motion for change of venue. Ross sought the change of venue due to the degree of allegedly prejudicial pretrial publicity. Appellant now contends that this claim also required further evidentiary development in the federal habeas court. We disagree and affirm the judgment of the lower court on this issue.

Appellant's only basis for the contention that an evidentiary hearing was warranted is that there was evidence in addition to that introduced at the state hearing showing the extensiveness of the pretrial publicity in Ross' case. None of the evidence to which appellant points, however, is "newly discovered" within the meaning of the fourth *Townsend* circumstance. Appellant has offered no reason why the evidence could not have been presented to the state court.[9] Accordingly, no federal evidentiary hearing was required. *Townsend v. Sain,* 83 S.Ct. at 759.

Alternatively, appellant asserts that the district court erred as a matter of law in concluding that the evidence in the record did not establish a violation of the right to a fair and impartial jury under the principles of *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) and *Bronstein v. Wainwright,* 646 F.2d 1048 (5th Cir.1981).

 The Sixth and Fourteenth Amendment right to an impartial jury does not require that jurors be wholly ignorant of the case before trial begins.

> To hold that the mere existence of any notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin v. Dowd,* 366 U.S. at 723, 81 S.Ct. at 1642 (1961), quoted in opinion below, 538 F.Supp. at 101. A trial court's finding as to a prospective juror's ability to lay aside an opinion about the case arising from pretrial publicity should not be set aside unless the error is "manifest." *Id.* at 723–24, 81 S.Ct.

at 1642–44 *quoting Reynolds v. United States,* 98 U.S. 145, 156, 25 L.Ed. 244 (1879). *See also United States v. Robbins,* 500 F.2d 650, 653 & n. 3 (5th Cir.1977).

 One who challenges the fairness of the trial based on prejudicial publicity carries the burden of showing that prejudice resulted from the publicity. *Irvin v. Dowd,* 81 S.Ct. at 1643, *quoting Reynolds v. United States,* 98 U.S. at 157. This is especially true in a federal habeas proceeding. *See Sumner v. Mata,* 429 U.S. at 550–51, 101 S.Ct. at 771; 28 U.S.C. § 2254(d).

 Petitioner must show an actual or identifiable prejudice on the part of the jury resulting from publicity, *Mayola v. Alabama,* 623 F.2d 992, 996 (5th Cir.1980), *cert. denied,* 451 U.S. 913, 101 S.Ct. 1986, 68 L.Ed.2d 303 (1981); community prejudice actually infecting the jury box, *Bronstein v. Wainwright,* 646 F.2d at 1051; or pretrial publicity so inflammatory and prejudicial and so pervasive or saturating the community as to render virtually impossible a fair trial by an impartial jury, thus raising a presumption of prejudice, *United States v. Capo,* 595 F.2d 1086, 1090 (5th Cir.1979), *cert. denied,* 444 U.S. 1012, 100 S.Ct. 660, 62 L.Ed.2d 641 (1980). *See also Murphy v. Florida,* 421 U.S. 794, 803, 95 S.Ct. 2031, 2037, 44 L.Ed.2d 589 (1975); *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); *Mayola v. Alabama,* 623 F.2d at 997.

 In determining whether an unbiased jury was empaneled, an appellate court is obligated to make an independent evaluation of the circumstances involved in the case. *Capo, supra* at 1090; *Bronstein, supra* at 651. The district court concluded

---

**9.** In any event, the district court did consider the additional evidence proffered (depositions of local media representatives and exhibits of newspaper stories) and concluded that the evidence did not support the allegation that the atmosphere at the time of the trial in any way prevented Ross the measured and impartial judicial proceeding required under *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) and *Bronstein v. Wainwright,* 646 F.2d 1048 (5th Cir.1981). *Mitchell v. Hopper,* 538

F.Supp. 77, 101–02 (S.D.Ga.1982). Appellant identified no other potential evidence that he reasonably believed could be developed at a federal evidentiary hearing. We agree that the facts alleged, even if proved, would not demonstrate a violation of Ross' constitutional rights. *See United States v. Capo,* 595 F.2d 1086, 1090 (5th Cir.1979). An evidentiary hearing was therefore not required. *Guice v. Fortenberry,* 661 F.2d 496, 503 (5th Cir.1981) (en banc).

that appellant failed to prove either actual and identifiable prejudice of jury members or that community prejudice actually infected the jury box. *Mitchell v. Hopper,* 538 F.Supp. 77, 102 (S.D.Ga.1982). We agree and conclude also that the pretrial publicity was not so inflammatory and pervasive as to raise a presumption of prejudice. *Cf. Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *United States v. Capo,* 595 F.2d 1086 (5th Cir.1979).

As revealed in the voir dire, virtually every venireperson and actual juror had heard or read accounts of the case. The additional evidence proffered in the proceedings below supports the court's conclusion that the case received much publicity. Only six of the venirepersons, however, indicated that they had a preconceived opinion about Ross' guilt or innocence based on the pretrial publicity. Only three of these persons voiced the view that they could not set their opinions aside and judge the case on the evidence alone. These three venirepersons were excused for cause. Certainly no significant number of prospective jurors were prejudiced by the pretrial publicity. This stands in sharp contrast with the situation in *Irvin v. Dowd,* 81 S.Ct. at 1645, where of 430 venirepersons questioned, 268, almost two-thirds, were excused for cause due to fixed opinions as to the guilt of a petitioner. Moreover, unlike *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963), and *Mayola v. Alabama,* 623 F.2d 992 (5th Cir.1980), there were no confessions by Ross televised or reported, and the coverage, while extensive,[10] was neither pervasive nor inflammatory. *Mur-*

*phy v. Florida,* 421 U.S. 794, 798–99, 95 S.Ct. 2031, 2035, 44 L.Ed.2d 589 (1975); *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663. *See also Mayola v. Alabama,* 623 F.2d at 998 & n. 4. The judgment of the district court on this issue therefore is AFFIRMED.

### G. Erroneous Jury Instructions at Penalty Phase

During the oral argument before this court, counsel for appellant for the first time raised a challenge to the instructions given to the jury in the sentencing phase. He argued that the instructions were inadequate under *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978), as interpreted in this circuit's decisions in *Goodwin v. Balkcom,* 684 F.2d 794, 805 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983); *Spivey v. Zant,* 661 F.2d 464 (5th Cir.1981), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982), by failing to guide the jury in the consideration and understanding of the nature and function of mitigating circumstances and the relationship between aggravating and mitigating circumstances. Whatever the merit of appellant's contention, we find that the claim is not properly before us.

The law in this circuit is clear that arguments not presented and for which proof is not offered in the district court will not be considered for the first time on appeal.[11] *See, e.g., Stephens v. Zant,* 716 F.2d 276, at 277 (11th Cir.1983) (per curiam); *Cobb v. Wainwright,* 666 F.2d 966, 968 n. 1 (5th Cir.

---

**10.** The record shows that the circulation of the *Moultrie Observer,* in which many reports were published, circulated to approximately 25% of the county's population in 1974, the year of the trial. December 6, 1979 Deposition of Dwain Walden. In *Rideau,* the *prejudicial* coverage was circulated to an even larger percentage of the relevant population. 373 U.S. at 724, 83 S.Ct. at 1418.

**11.** Although some cases have stated that there are exceptions to this rule, *see, e.g., Johnson v. Smith,* 696 F.2d 1334, 1338 (11th Cir.1983)

("special circumstances"); *Fehlhaber v. Fehlhaber,* 681 F.2d 1015, 1030 (5th Cir. Unit B 1982) (obvious error resulting in "miscarriage of justice"); *Response of Carolina, Inc. v. Leasco Response, Inc.,* 537 F.2d 1307, 1324 (5th Cir.1976) ("where the interest of substantial justice is at stake"), none of these cases was decided on a finding that the circumstances were exceptional. Nor did they involve an issue mentioned by counsel for the first time in oral argument.

Unit B), *cert. denied,* 457 U.S. 1107, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982). Accordingly, we decline to rule on the merits of appellant's *Lockett* claim.

AFFIRMED in part, REVERSED and REMANDED as to Part II E.